[No. A083865. First Dist., Div. Two. Jan. 19, 2000.]

PONOYOTA WALKER et al., Plaintiffs and Appellants, v. ALLSTATE INDEMNITY COMPANY et al., Defendants and Respondents.

**COUNSEL**

Kevin J. McInerney; J. William Dawson; and Brian D. Monaghan for Plaintiffs and Appellants.

Heller, Ehrman, White & McAuliffe, Paul Alexander, Vanessa Wells and Todd E. Adler for Defendant and Respondent Allstate Indemnity Company.

Barger & Wolen, Kent Keller, Steven H. Weinstein and Eric M. Crowe for Defendant and Respondent Farmers Insurance Exchange.

OPINION

HAERLE, J.—

## I.  INTRODUCTION

Appellants filed suit on behalf of a putative class of automobile insurance customers against over 70 insurers, including respondents Allstate Indemnity Company (Allstate) and Farmers Insurance Exchange (Farmers), and Charles Quackenbush in his capacity as the Insurance Commissioner of the State of California. Appellants' complaint alleged four causes of action against the insurers, each seeking damages or disgorgement of allegedly excessive premiums that the insurers have been authorized to collect since September 29, 1994. The trial court granted the insurers' demurrers without leave to amend. We will affirm the resulting judgment.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

In order to understand the complaint filed herein, some background regarding Proposition 103 and insurance regulation in California is required. We borrow a succinct description written by now Chief Justice (and then Acting Presiding Justice) George:

"The passage of Proposition 103 made 'numerous fundamental changes in the regulation of automobile and other types of insurance.' [Citation.] Prior to passage of the initiative, California was 'a so-called "open rate" state, that is, rates [were] set by insurers without prior or subsequent approval by the Insurance Commissioner.' [Citation.] The Commissioner was empowered to prohibit an insurance rate only if ' "a reasonable degree of competition [did] not exist in the area" ' and the rate was found to be ' "excessive, inadequate or unfairly discriminatory." ' [Citation.]

"Subsequent to passage of Proposition 103, '[e]very insurer which desires to change any rate shall file a complete rate application with the commissioner.' [Citation.] 'The commissioner shall notify the public of any [such] application.' A hearing may be held if the commissioner, either on his or her own motion or pursuant to the request of a consumer, determines to do so and must be held, upon timely request, if the proposed rate increase exceeds [certain percentages]. [Citation.] The initiative includes several provisions governing the conduct of such rate hearings. The commissioner shall not approve a rate 'which is excessive, inadequate, unfairly discriminatory or otherwise in violation of this chapter.' [Citation.]" (*California Auto. Assigned Risk Plan v. Garamendi* (1991) 232 Cal.App.3d 904, 909-910 [283 Cal.Rptr. 562], fns. omitted.)

The statutes and regulations provide for consumer participation in the administrative ratesetting process. (Ins. Code, §§ 1861.10, 1861.05-1861.08; Cal. Code Regs., tit. 10, §§ 2648.2, 2652.9.[1]) Judicial review of the commissioner's decision is available by timely petition for writ of administrative mandamus. (§§ 1858.6, 1861.09.) Once the commissioner's decision is final, an insurer must charge only the approved rate. (§ 1861.01, subd. (c).) A consumer, however, may petition the commissioner to review the continued use of any rate. (§§ 1861.10, 1861.05, subd. (a).)

Appellants filed their first amended complaint on February 19, 1998. It stated four causes of action against the insurer defendants: violation of section 1861 et seq., violation of Business and Professions Code section 17200 et seq., unjust enrichment, and fraud. The causes of action were each bottomed on the insurers' charging approved rates alleged nevertheless to be "excessive" within the meaning of section 1861.05, subdivision (a).[2] The complaint supported its claim of "excessive" premiums with numerous factual allegations regarding industry trends and rates of return earned by individual insurers. The complaint further alleged the existence of regulations that, on their face are applicable to the ratesetting process, but which cannot be (and have not been) used, because of the failure of the commissioner to adopt certain "generic factors" necessary for the use of the formula set forth in the regulations. (For a detailed discussion of these regulations see *20th Century Ins. Co. v. Garamendi* (1994) 8 Cal.4th 216, 248-256 [32 Cal.Rptr.2d 807, 878 P.2d 566] [primarily addressing the regulations in the context of the rollback, but also discussing prior approval].) Each cause of action against the insurers sought the redetermination of the premium rates in effect since September 1994 in accordance with certain statutory and regulatory criteria and a refund of the premiums collected in excess of the redetermined amounts.

The complaint also contained a section entitled "Administrative Remedies Have Been Exhausted." The only specific allegations, however, related to a June 1996 petition filed by Consumers Union that requested an investigation to determine whether auto insurance rates were excessive and reduction of these rates in compliance with existing regulations. The complaint alleged that the commissioner denied the petition in August 1996. Consumers Union did not appeal that decision.[3]

The insurer defendants, including respondents, demurred to the complaint and a hearing was held on May 19, 1998. The trial court granted the

---

[1]Unless otherwise specified, all further statutory references are to the Insurance Code.

[2]That subdivision states in pertinent part: "No rate shall be approved or remain in effect which is excessive, inadequate, unfairly discriminatory or otherwise in violation of this chapter." (§ 1861.05, subd. (a).)

[3]Although not alleged in the relevant complaint, the record reveals that Consumers Union filed another petition on October 1, 1996, requesting rulemaking hearings to establish generic

demurrers without leave to amend, reasoning that the case was essentially a rate case over which the commissioner had exclusive original jurisdiction and, therefore, that challenges to rate applications must be timely raised during the administrative process and not by a class action long after the time for challenging individual rate applications has passed. As the trial court stated, having failed to so object, "it's antithetical, I think, to suggest that when you've gone through that kind of [administrative] process, that rates can be considered illegal under any circumstances."

Subsequently, appellants dismissed the commissioner from the suit. The appellants filed a timely notice of appeal from the judgment entered after the demurrers, but (of the over 70 insurer defendants) naming only Allstate and Farmers as respondents.

## III. Discussion

■ The standard of review on appeal from a judgment dismissing an action after sustaining a demurrer is well settled. "The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken. [Citation.]' [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any . . . legal theory. [Citation.]" (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966-967 [9 Cal.Rptr.2d 92, 831 P.2d 317].) As always, questions of law are independently reviewed. (E.g., *R & P Capital Resources, Inc. v. California State Lottery* (1995) 31 Cal.App.4th 1033, 1036 [37 Cal.Rptr.2d 436] [interpretation of statutes]; *International Engine Parts, Inc. v. Feddersen & Co.* (1995) 9 Cal.4th 606, 611 [38 Cal.Rptr.2d 150, 888 P.2d 1279] [application of statute to undisputed facts].)

■ Appellants' primary argument is that the trial court erred in dismissing their claims, because it has jurisdiction over them pursuant to sections 1861.03, subdivision (a), and 1861.10, subdivision (a). Respondents counter that sections 1860.1 and 1860.2 bar the suit. We agree with respondents.

Sections 1850 through 1861.16 comprise chapter 9 of part 2 of division 1 of the Insurance Code and set forth a comprehensive scheme for the regulation of rates and rating practices. Prior to the passage of Proposition 103, this

---

factors to apply to rate applications. In response, the commissioner established an investigatory task force to determine the appropriate methodology for reviewing rate applications. This task force was subsequently disbanded in March 1998.

chapter was referred to as the McBride/Grunsky Insurance Regulatory Act or, simply, the McBride Act. Sections 1860.1 and 1860.2 were part of the McBride Act and were not amended or repealed by the passage of Proposition 103. Section 1860.1 provides: "No act done, action taken or agreement made pursuant to the authority conferred by [Chapter 9] shall constitute a violation of or grounds for prosecution or civil proceedings under any other law of this State heretofore or hereafter enacted which does not specifically refer to insurance." Section 1860.2 further provides: "The administration and enforcement of this chapter [9] shall be governed solely by the provisions of this chapter. Except as provided in this chapter, no other law relating to insurance and no other provisions in this code heretofore or hereafter enacted shall apply to or be construed as supplementing or modifying the provisions of this chapter unless such other law or other provision expressly so provides and specifically refers to the sections of this chapter which it intends to supplement or modify."

Historically, these sections have been interpreted to provide exclusive original jurisdiction over issues related to ratemaking to the commissioner. (See *Chicago Title Ins. Co. v. Great Western Financial Corp.* (1968) 69 Cal.2d 305, 323 [70 Cal.Rptr. 849, 444 P.2d 481] ["a court is not the appropriate initial arbiter of factors involved in insurance costs"]; *Karlin v. Zalta* (1984) 154 Cal.App.3d 953, 974, 983-986 [201 Cal.Rptr. 379] [dismissing claim to recoup excess premiums for failure to exhaust McBride Act administrative procedures and remedies], disapproved on other grounds in *Manufacturers Life Ins. Co. v. Superior Court* (1995) 10 Cal.4th 257, 267, 270, 272, 288 [41 Cal.Rptr.2d 220, 895 P.2d 56].)

Tellingly, appellants simply ignore these sections in their opening brief. In their reply brief, they string together pages of statutory quotations with hardly any analysis demonstrating how the quoted statutes aid their cause. Appellants' inability to craft a cohesive argument taking cognizance of these immunity statutes demonstrates, we believe, that their claims are inimical to the statutory scheme that they purport to enforce and, thus, were properly dismissed.

As noted above, Proposition 103 wrought many changes to the McBride Act, including the addition of appellants' primary authority for their suit, section 1861.03, subdivision (a), which provides in relevant part: "The business of insurance shall be subject to the laws of California applicable to any other business, including, but not limited to . . . the antirust and unfair business practices laws (Parts 2 (commencing with Section 16600) and 3 (commencing with Section 17500) of Division 7 of the Business and Professions Code)." In analyzing the interplay between section 1861.03 and sections 1860.1 and 1860.2, appellants simply write: "Clearly the 1989 adoption

of the above section modified the 1948 strictures of section 1860.1 and 1860.2." We need not determine the outer contours of any such modifications, however, to conclude that these latter sections retain more than enough vitality to bar appellants' present claims.

If section 1860.1 has any meaning whatsoever (which under the accepted rules of statutory construction it must), the section must bar claims based upon an insurer's charging a rate that has been approved by the commissioner pursuant to the amended McBride Act. The statutory scheme enacted by the voters in Proposition 103 compels this result. Under this scheme, the *commissioner* is charged with setting rates after an extensive hearing process in which consumers and interested parties are encouraged to participate. Interested parties have access to the detailed rate application and supporting data filed by the insurer. (§ 1861.07; Cal. Code Regs., tit. 10, § 2652.9.) Interested parties may request that the commissioner hold a public hearing on the rate application. (§ 1861.05, subd. (c).) Interested parties may participate in adjudicatory hearings before an administrative law judge. (§ 1861.08.) The commissioner makes his final decision on the rate application based upon the weight of the evidence as reflected in the record developed in the hearing. (§ 1861.08, subd. (c).) Interested parties may seek judicial review of the commissioner's decision by filing a timely petition for writ of administrative mandamus. (§§ 1861.09 and 1858.6.) Interested parties may also request certain attorneys' fees resulting from their participation in this process. (§ 1861.10, subd. (b).) When this process has run its course, the insurers must charge the approved rate and cannot be held civilly liable for so doing. (§§ 1861.01, subd. (c), 1858.07, 1859.1, 1861.05, 1861.09.) A consumer or an interested party is, however, provided the opportunity to petition the commissioner to review the continued use of any approved rate, i.e. obtain prospective, not retrospective, relief. (§§ 1861.10, 1861.05, subd. (a).) As the trial court recognized, under the statutory scheme enacted by the voters, the charging of an approved rate cannot be deemed "illegal" or "unfair" for purposes of the Unfair Business Practices Act or, indeed, tortious. (Cf. *Karlin v. Zalta, supra,* 154 Cal.App.3d at p. 983 ["A premium approved by the Insurance Commissioner cannot be deemed to be excessive"].)

In an attempt to avoid even the narrowest reading of section 1860.1, appellants argue that the allegation that the rates were approved without compliance with the "generic factors regulations" renders the rates "illegal and void" and, therefore, the immunity found in sections 1860.1 and 1860.2 does not apply. First of all, this argument ignores the actual language of section 1860.1. That statute refers to an "action taken . . . pursuant to the authority conferred by this chapter . . . ." Whatever else the amended McBride Act does, it definitely confers authority upon the commissioner to

approve rates. Moreover, an insurer's action of collecting premiums consistent with an approved rate is certainly done pursuant to the authority conferred on the commissioner by the amended McBride Act.

Second, appellants support their argument with two clearly distinguishable cases. First, appellants cite *Security Services, Inc. v. Kmart Corp.* (1994) 511 U.S. 431 [114 S.Ct. 1702, 128 L.Ed.2d 433] (*Security Services*) for the proposition that an approved rate is void *ab initio* if a rate applicant does not comply with all the applicable regulations. In making this assertion, appellants ignore crucial distinctions between that case and the present case. In *Security Services*, a carrier had filed shipping rates with the Interstate Commerce Commission (ICC). The carrier's rates referred to another organization's filing. (*Id.* at p. 433 [114 S.Ct. at p. 1705].) A specific ICC regulation provided that a carrier could not use another organization's rates unless a valid power of attorney was in force and, absent the power of attorney, the carrier's rates would be void. (*Id.* at p. 436 [114 S.Ct. at p. 1706].) The carrier at issue had not maintained a valid power of attorney and the high court thus determined that the carrier's rates were void and unenforceable under the ICC regulation. (*Id.* at p. 444 [114 S.Ct. at p. 1710].) In so doing, the court recognized that the rule against the retroactive voiding of rates (the federal filed rate doctrine) "is not apposite here, for the [ICC] regulation does not apply retroactively." (*Id.* at p. 441 [114 S.Ct. at p. 1709].) The holding was simply that the filed rates were void at the time of filing, *because the applicable regulation expressly so stated.*[4] No such statute or regulation applies to the rates challenged in this case.[5]

Similarly, appellants' reliance upon *California Adj. Co. v. Atchison etc. Ry. Co.* (1918) 179 Cal. 140 [175 P. 682, 13 A.L.R. 274] is unavailing. That case addressed the unique situation of rates that had been set by an agency in

---

[4]Contrary to appellants' assertion, we do not perceive the respondents to be relying on the federal "filed rate doctrine." The doctrine, however, is analogous to the scheme explicitly embodied in the Insurance Code and, to the extent it is relevant at all, is consistent with our interpretation of the statutory provisions at issue in this case. (See *Day v. AT&T Corp.* (1998) 63 Cal.App.4th 325, 334-341 [74 Cal.Rptr.2d 55] [filed rate doctrine barred monetary recovery under unfair business practices claim relating to prepaid phone cards].)

[5]Indeed, the statute most closely related to appellants' specific claim would seem to wholly undercut it. Section 1861.055, subdivision (b), provides: "The sole remedy for failure by the commissioner to adopt the regulations [governing the rate setting hearings] within the prescribed period or to abide by those regulations once adopted shall be a writ of mandate by any aggrieved party in a court of competent jurisdiction to compel the commissioner to adopt those regulations, or commence or resume hearings." Thus, appellants are in one sense correct that the superior court has jurisdiction over allegations that the commissioner has not properly applied the applicable regulations. Nothing in the statutory scheme, however, supports an action in the court to reopen ratemaking decisions years after the time for judicial review of those decisions has passed in an effort to recoup premiums collected in accordance with the commissioner's final decisions.

violation of a specific clause of the California Constitution. (*Id.* at p. 149.) As such, the case has no persuasive value.

Appellants attempt to bolster their argument by reading section 1861.03 in conjunction with section 1861.10, subdivision (a). The latter statute provides: "Any persons may initiate or intervene in any proceeding permitted or established pursuant to this chapter, challenge any action of the commissioner under this article, and enforce any provision of this article." There is nothing in either statute, or even the two considered together, to support appellants' implicit position that they may challenge a final order of the commissioner in a manner not prescribed by the amended McBride Act and after the time to do so has clearly passed. Appellants' argument seems an obvious attempt to avoid consumer participation provisions of Proposition 103 that appellants deem burdensome or impractical and thus frustrate the power granted to the commissioner by the voters to set insurance rates after soliciting both insurer and consumer input into his decision. To read sections 1861.03 and 1861.10 as appellants urge would result in an unnecessary conflict between these statutes and section 1860.1, which embodies the finality of the commissioner's ratemaking decision. Put another way, to accept appellants' argument would require violation of well-accepted principles of statutory construction. (*City of Huntington Beach v. Board of Administration* (1992) 4 Cal.4th 462, 468 [14 Cal.Rptr.2d 514, 841 P.2d 1034]; *Wells v. Marina City Properties, Inc.* (1981) 29 Cal.3d 781, 788 [176 Cal.Rptr. 104, 632 P.2d 217].)

On the other hand, our (and the trial court's) interpretation of the amended McBride Act as barring appellants' claims is supported not only by the language of the amended McBride Act itself, but also by a recent decision of our Supreme Court considering immunity provisions for title insurance companies. In *Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 44 [77 Cal.Rptr.2d 709, 960 P.2d 513], the court had occasion to consider the effect of sections 12414.26 and 12414.29, which contain language almost identical to sections 1860.1 and 1860.2. While allowing the plaintiffs' unfair competition claim to proceed, the court took care to recognize that other such claims premised upon ratesetting activities would be barred by the applicable immunity statutes, by stating: "[T]he Insurance Code does not displace the UCL [unfair competition law] except as to title [insurance] company activities related to rate setting." (19 Cal.4th at p. 33; see also *Manufacturers Life Ins. Co. v. Superior Court, supra,* 10 Cal.4th at pp. 270, 272; 288-289 (conc. opn. of Mosk, J.).)

Notwithstanding this recognition, appellants contend their interpretation of the relevant statutes is supported by *Farmers Ins. Exchange v. Superior*

*Court* (1992) 2 Cal.4th 377 [6 Cal.Rptr.2d 487, 826 P.2d 730] (*Farmers*). Taken at face value, some language in *Farmers* does support appellants' view that their Unfair Business Practices Act claim should survive demurrer. We are not persuaded, however, that *Farmers* is controlling here.

The *Farmers* decision arose out of a suit by the Attorney General under the Unfair Business Practices Act against insurers for violations of Insurance Code sections 1861.02 and 1861.05, among others, in connection with eligibility rules and rates for "Good Driver Discount" policies. The issue before the court was whether section 1861.03 "precludes a court from exercising discretion under the primary jurisdiction doctrine" to "decline to hear a suit until the administrative process has been invoked and completed." The court held that section 1861.03 did not speak to this issue and that the Attorney General should first invoke the administrative process in that particular case. (*Farmers, supra*, 2 Cal.4th at pp. 381, 394, 401.)

As respondent Allstate points out, the *Farmers* court did not consider whether an Unfair Business Practices Act claim arising in an exclusively ratemaking context could be brought in the superior court in light of the immunity provided in Insurance Code sections 1860.1 and 1860.2. While, in a brief footnote, those sections were recognized as barring statutory claims under the Insurance Code, the decision did not discuss them in the context of an Unfair Business Practices Act claim. (*Farmers, supra*, 2 Cal.4th at p. 382, fn. 1.) And, as pointed out above, while subsequent high court decisions also have upheld the viability of Unfair Business Practices Act claims against insurers in the wake of Proposition 103, the court has also continued to recognize the existence of statutory exceptions for ratemaking decisions. (*Quelimane Co. v. Stewart Title Guaranty Co., supra*, 19 Cal.4th at pp. 33, 44-45; *Manufacturers Life Ins. Co. v. Superior Court, supra*, 10 Cal.4th at pp. 270, 272; see also pp. 288-289 (conc. opn. of Mosk, J.).)

Moreover, this is not a case, like *Farmers*, where the administrative process has yet to be invoked. In this case, that process was invoked and followed to its conclusion. No challenges to the commissioner's decisions were brought in the superior court as specifically permitted by the governing statutes. As appellants alleged in their complaint, the insurers then charged the rates approved by the commissioner. Under these circumstances, there is simply no violation of the law to support a Business and Professions Code section 17200 claim for disgorgement of premiums. Furthermore, inasmuch as appellants have now dismissed the commissioner from the case, they cannot argue that they are seeking any form of prospective relief.

In the end, *Farmers* is inapposite. Despite the amount of briefing in this case regarding the nature of the relative jurisdiction granted to the commissioner and the superior court, we are convinced that the trial court properly

disposed of appellants' complaint because (1) the time has long since lapsed to challenge the actions on which the complaint was based and (2) explicit statutory authority precludes any further civil challenges to those actions to recoup premiums charged pursuant to approved rates. Under these circumstances, appellants simply have not and cannot state a viable claim against the respondent insurers.

## IV.  DISPOSITION

The judgment is affirmed. Costs on appeal to respondents.

Kline, P. J., and Ruvolo, J., concurred.

. Appellants' petition for review by the Supreme Court was denied April 12, 2000.