119 Cal.Rptr.2d 655 (2002)
98 Cal.App.4th 426
Felicia Kay EASTBURN, a Minor, etc., et al., Plaintiffs and Appellants,
v.
REGIONAL FIRE PROTECTION AUTHORITY et al., Defendants and Respondents.
No. E029463.
Court of Appeal, Fourth District, Division Two.
May 14, 2002.
As Modified May 22, 2002.
Review Granted July 31, 2002.
*656 Law Offices of Charles D. Sneathern and Charles D. Sneathern, Torrance, for Plaintiffs and Appellants.
Graves & King, Patrick L. Graves, Harvey W. Wimer III, Riverside, and Dennis J. Mahoney, San Bernardino, for Defendants and Respondents Regional Fire Protection Authority and City of Victorville.
Cuff, Robinson & Jones and W.O. Robinson, for Defendant and Respondent Barstow Fire Protection District.

OPINION
GAUT, J.

1. Introduction

Plaintiffs, Felicia Kay Eastburn, a young girl, and her parents, allege in their complaint that she suffered an electric shock while in the bathtub and defendants did not provide prompt emergency service so that she suffered permanent, debilitating injuries. The court sustained without leave to amend the demurrers asserted by two defendants, the Regional Fire Protection Authority (Authority) and the Barstow Fire Protection District (District). The Eastburns appeal from the subsequent judgment of dismissal entered against them and in favor of the Authority, the District, and the City of Victorville.
We affirm the judgment on the grounds that, under Government Code section 815 and Health and Safety Code section 1799.107,[1] defendants are immune from liability except for bad faith or grossly negligent conduct, which plaintiffs admittedly cannot allege.

2. Discussion

In reviewing an order sustaining a demurrer without leave to amend, we assume the facts alleged in the complaint are true.[2] We test the trial court's ruling for an abuse of discretion.[3] On questions of law, we conduct a de novo review.[4]
The complaint alleges defendants are public entities "providing emergency services in the County of San Bernardino" and "emergency dispatch services for all 911 callers." Plaintiffs further allege defendants "failed to dispatch emergency personnel with emergency equipment, so that Plaintiff [the minor] was denied early and prompt medical attention." It is also alleged defendants were "negligent and careless" and "willful, wanton and in conscious disregard of the rights of the safety of the general public, including Plaintiff," thus demonstrating malice.
*657 The threshold issue is whether plaintiffs can assert a negligence claim against defendants, all of whom are public entities and two of which are fire protection agencies. A public entity is generally immune from tort liability. As stated in Government Code section 815: "Except as otherwise provided by statute: [¶] (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person. [¶] (b) The liability of a public entity ... is subject to any immunity of the public entity provided by statute, including this part, and is subject to any defenses that would be available to the public entity if it were a private person."
The only statute identified by plaintiffs as providing an exception to the general rule of governmental immunity is section 1799.107. Section 1799.107 makes emergency rescue personnel liable only for grossly negligent or bad faith conduct:
"(a) ... [A] qualified immunity from liability shall be provided for public entities and emergency rescue personnel providing emergency services.
"(b) ... [N]either a public entity nor emergency rescue personnel shall be liable for any injury caused by an action taken by the emergency rescue personnel acting within the scope of their employment to provide emergency services, unless the action taken was performed in bad faith or in a grossly negligent manner...."
Section 1799.107, subdivision (d), defines "emergency rescue personnel" to mean "any person who is an officer, employee, or member of a fire department or fire protection or firefighting agency of the federal government, the State of California, a city, county, city and county, district, or other public or municipal corporation or political subdivision of this state, or of a private fire department, whether that person is a volunteer or partly paid or fully paid, while he or she is actually engaged in providing emergency services as defined by subdivision (e)."
In their opening brief on appeal, plaintiffs assume that section 1799.107 applies in a case based on alleged negligence in 911 emergency dispatching. In Ma v. City and County of San Francisco,[5] the First District Court of Appeal determined that, based on common law tort principles rather than statute, San Francisco owed a duty of care to citizens using its 911 emergency service.[6] The Ma court also decided that the qualified immunity provided by section 1799.107 does not apply to 911 dispatching because 911 dispatching does not come within the statutory definition of "emergency services."[7] Finally, Ma held the discretionary immunity afforded by Government Code section 820.2 does not apply to 911 dispatching.[8]
Notably, Ma offered no discussion about the general immunity afforded under Government Code section 815. But governmental immunity forecloses the imposition of liability for ordinary negligence based on common law tort principles, rather than *658 statute, such as formed the analysis in Ma. As acknowledged by plaintiffs here, defendants are not legally required to establish emergency medical services. But where those services are instituted under the aegis of a fire protection agency, the qualified immunity of section 1799.107 applies.
Furthermore, we are not persuaded by Ma's reliance on legislative history to support its conclusion that section 1799.107's definition does not encompass 911 dispatching. The definition of "emergency services" includes, "but is not limited to, first aid and medical services, rescue procedures and transportation, or other related activities necessary to insure the health or safety of a person in imminent peril."[9] Such activities would necessarily include a 911 dispatching system. Even if the Legislature has not enacted an express amendment to that effect, it does not mean the 911 system was not already covered by the language of the statute. We disagree with Ma and we will not follow it here.
Instead, we conclude that, under Government Code section 815, the three governmental defendants' duty toward plaintiffs is limited to that provided under section 1799.107. Absent bad faith or gross negligence, defendants are immune for the acts of an emergency dispatcher in their employ.[10]
At the hearing on the Authority's demurrer, plaintiffs' counsel told the court he could not amend the complaint except to add an allegation of gross negligence or bad faith. Relying on Zepeda v. City of Los Angeles,[11] the court said: "... [P]laintiff has not indicated anything that changes in the complaint or the amendments that could take it beyond Zepeda or [sic ] the Court will sustain the demurrer without leave to amend.... I can't see how it can be amended at this point to get beyondor work its way around Zepeda."
The Zepeda court held there was no liability for paramedics who refused to treat a shooting victim until the police arrived. Zepeda discussed both general and special duty: "As a general rule, one has no duty to come to the aid of another. A person who has not created a peril is not liable in tort merely for failure to take affirmative steps to assist or protect another unless there is some special relationship between them which gives rise to a duty to act. [Citations.] Other than cases involving landowners and their invitees, those cases finding the existence of a special relationship most frequently involve some act or omission on the part of the defendant that either created a risk or increased an existing risk to a known person. [Citations.]"[12]
The Zepeda court reasoned: "[T]he City's paramedics had no general duty to render aid to plaintiffs' decedent. Based upon the allegations of the complaint, the emergency personnel involved did not create the peril to decedent, they did not voluntarily assume a special duty to assist him, they made no promise or statement to induce reliance, nor did they increase the risk to him that otherwise would have existed. Said another way, the paramedics could not negligently perform an act they had not undertaken to perform, and to that *659 extent plaintiffs' pleading is defective on its face." [13]
In Zepeda, plaintiffs tried to assert "section 1799.107 imposes a mandatory duty upon emergency rescue personnel to render assistance whenever summoned."[14] The court rejected this interpretation: "... [W]e think it obvious that the statute does not impose a general duty upon emergency personnel to provide assistance whenever and wherever summoned. Subdivision (b) merely defines the level of negligence that will result in the imposition of liability once assistance is rendered. [Citations.]" [15]
On appeal, plaintiffs argue they should have been allowed to allege either gross negligence or, in the alternative, that a special relationship, giving rise to a special duty, existed between plaintiffs and defendants. As additional facts, not previously pleaded, they maintain that the child's father, plaintiff Herbert Eastburn, was repeatedly placed on hold when he called 911 but the child was finally transported to the hospital by a deputy sheriff who had monitored the call.
The analysis used in Zepeda applies in a case involving an emergency dispatcher.[16] Here defendants had no duty to plaintiffs except to avoid acting in bad faith or with gross negligence. Defendants did not create the peril to plaintiffs, increase their risk, or assume a special duty to assist them. Defendants made no promises or statements to induce reliance. Plaintiffs' lawyer conceded the complaint could not be amended to allege additional facts showing liability. Even if pleaded, the additional facts mentioned by plaintiffs in their appellate brief would not support a finding of liability for gross negligence.
In an effort to establish a special duty, plaintiffs cite an Indiana case, Koher v. Dial,[17] in which plaintiff suffered a heart attack and a 911 dispatcher promised to dispatch an ambulance but did not. The appellate court said: "Standing alone, a governmental entity's dispatch of emergency services does not create a private duty."[18] Instead, plaintiff had to show a special relationship and duty between himself and the public entity. The court found such a relationship existed based on the plaintiffs detrimental reliance on the dispatcher's promise that an ambulance would be dispatched immediately.[19]
The facts in the present case do not show detrimental reliance by plaintiffs, creating a special relationship between them and defendants. Apparently plaintiffs were never promised an ambulance or delivery of emergency services because the father was placed on hold. Like the paramedics who refused to treat the shooting victim, the emergency dispatcher, acting for defendants, never actually provided emergency services to plaintiffs.
In the absence of a special duty owed by defendants to plaintiffs and in view of the qualified immunity provided by section *660 1799.107, the court properly sustained defendants' demurrers without leave to amend.

3. Disposition

We affirm the judgment and order defendants, as prevailing parties, to recover their costs on appeal.
We concur: RAMIREZ, P.J., and HOLLENHORST, J.
NOTES
[1] All statutory references are to the Health and Safety Code unless otherwise stated.
[2] Monition v. Royal Packing Co. (2000) 22 Cal.4th 575, 579, 94 Cal.Rptr.2d 3, 995 P.2d 139; Zepeda v. City of Los Angeles (1990) 223 Cal.App.3d 232, 234, 272 Cal.Rptr. 635.
[3] Hendy v. Losse (1991) 54 Cal.3d 723, 742, 1 Cal.Rptr.2d 543, 819 P.2d 1.
[4] Crocker National Bank v. City and County of San Francisco (1989) 49 Cal.3d 881, 888, 264 Cal.Rptr. 139, 782 P.2d 278; Walker v. Allstate Indemnity Co. (2000) 77 Cal.App.4th 750, 754, 92 Cal.Rptr.2d 132.
[5] Ma v. City and County of San Francisco (2002) 95 Cal.App.4th 488, 115 Cal.Rptr.2d 544, Supreme Court Case Number S104759.
[6] Ma v. City and County of San Francisco, supra, 95 Cal.App.4th at pages 502-511, 115 Cal.Rptr.2d 544.
[7] Ma v. City and County of San Francisco, supra, 95 Cal.App.4th at pages 511-517, 115 Cal.Rptr.2d 544.
[8] Ma v. City and County of San Francisco, supra, 95 Cal.App.4th at pages 517-520, 115 Cal.Rptr.2d 544.
[9] Section 1799.107, subdivision (e).
[10] Section 1799.107, subdivisions (d) and (e).
[11] Zepeda v. City of Los Angeles, supra, 223 Cal.App.3d 232, 272 Cal.Rptr. 635.
[12] Zepeda v. City of Los Angeles, supra, 223 Cal.App.3d at page 235, 272 Cal.Rptr. 635.
[13] Zepeda v. City of Los Angeles, supra, 223 Cal.App.3d at page 236, 272 Cal.Rptr. 635.
[14] Zepeda v. City of Los Angeles, supra, 223 Cal.App.3d at page 236, 272 Cal.Rptr. 635.
[15] Zepeda v. City of Los Angeles, supra, 223 Cal.App.3d at page 237, 272 Cal.Rptr. 635.
[16] Zepeda v. City of Los Angeles, supra, 223 Cal.App.3d at pages 235-236, 272 Cal.Rptr. 635; Sullivan v. City of Sacramento (1987) 190 Cal.App.3d 1070, 235 Cal.Rptr. 844; Antique Arts Corp. v. City of Torrance (1974) 39 Cal.App.3d 588, 114 Cal.Rptr. 332.
[17] Koher v. Dial (1995) 653 N.E.2d 524.
[18] Koher v. Dial, supra, 653 N.E.2d at page 526.
[19] Koher v. Dial, supra, 653 N.E.2d at pages 526-527.