[No. B047146. Second Dist., Div. Four. July 25, 1991.]

CALIFORNIA AUTOMOBILE ASSIGNED RISK PLAN et al., Plaintiffs and Respondents, v.
JOHN GARAMENDI, as Insurance Commissioner, etc., Defendant and Appellant.

COUNSEL

Rubinstein & Perry, Karl L. Rubinstein, Dana Carli Brooks, Melissa S. Kooistra, Strumwasser & Woocher, Fredric D. Woocher, Michael J. Strumwasser and Susan L. Goodkin for Defendant and Appellant.

Leboeuf, Lamb, Leiby & Macrae, James R. Woods, Sanford Kingsley, Thomas E. McDonald, Karen Hahn Ventrell and Lorraine A. Barrabee for Plaintiffs and Respondents.

OPINION

**GEORGE, Acting P. J.**—The Insurance Commissioner of the State of California (hereinafter the commissioner) appeals from a judgment of the

superior court declaring that certain provisions of Proposition 103, an initiative measure entitled the Insurance Rate Reduction and Reform Act, apply to automobile insurance policies issued under the California Automobile Assigned Risk Plan (hereinafter CAARP). (Ins. Code, § 11620 et seq.; Cal. Code Regs., tit. 10, § 2400 et seq.)[1] The sole issue on appeal is whether the superior court correctly ruled that the hearing procedures established by Proposition 103 (§ 1861.05, subds. (b) and (c), and §§ 1861.06 through 1861.09) apply to hearings to set rates for automobile insurance policies issued under the assigned-risk plan.[2] For the reasons that follow, we reverse that portion of the judgment declaring that section 1861.05, subdivisions (b) and (c), and sections 1861.06 through 1861.09, inclusive, apply to hearings to set rates for automobile insurance policies issued under CAARP and affirm the judgment in all other respects.

### PROCEDURAL AND FACTUAL HISTORY

Proposition 103, passed by the voters on November 8, 1988, added to the Insurance Code an article entitled "Reduction and Control of Insurance Rates." (§§ 1861.01-1861.14.)[3] The following day, plaintiffs California Automobile Assigned Risk Plan[4] and Industrial Indemnity Company filed a complaint in superior court against the commissioner (at that time Roxani Gillespie and currently John Garamendi) and codefendants the State of California and the Attorney General (at that time John K. Van de Kamp and currently Daniel E. Lungren) seeking declaratory and injunctive relief.[5]

As subsequently amended, the complaint sought a judicial declaration that Proposition 103 does not apply to CAARP or its participating insurers regarding their assigned-risk business, and that sections 11620-11626.1 and the rules and regulations promulgated thereunder by the commissioner continue to govern CAARP's operations. The complaint further sought a judicial declaration that, to the extent Proposition 103 does apply to CAARP, it is unconstitutional.

A court trial was held on June 21, 1989. Defendants, represented by the Attorney General's Office, took the position the court should examine each

---

[1]All further statutory references are to the Insurance Code unless otherwise indicated.

[2]We express no opinion as to the correctness of the superior court's ruling regarding other provisions of Proposition 103, nor as to whether section 1861.055, enacted subsequent to the trial court's ruling, applies to hearings to set CAARP rates.

[3]Subsequent to the trial court's order, the Legislature added sections 1861.055, 1861.135, 1861.137, 1861.15, and 1861.16.

[4]California Code of Regulations, title 10, section 2401, states: "This plan and the instrumentality through which it is administered shall be known as the 'California Automobile Assigned Risk Plan.' "

[5]The State of California and the Attorney General are not parties to the present appeal.

provision of Proposition 103 individually to determine whether it is applicable, rather than determine whether Proposition 103, as a whole, applies to CAARP. After hearing lengthy argument, the court made tentative rulings on each issue, directing plaintiffs' attorneys to prepare a proposed judgment and submit it to counsel for defendants.

On July 19, 1989, defendant John Van de Kamp, Attorney General, filed a proposed judgment and stated in accompanying papers that, due to "an apparent conflict of interest," the commissioner henceforth would be represented by separate counsel. In another document filed that day, separate counsel representing the commissioner was substituted in place of the Attorney General's Office.

On December 19, 1989, following delays caused by the filing of motions for reconsideration by the Attorney General and the commissioner, the superior court filed a judgment which stated, in pertinent part:

"1. The provisions of Insurance Code § 1861.01, § 1861.02, § 1861.03 subd. (c), § 1861.11 and § 1861.12 do not apply to policies issued under assignment from the California Automobile Assigned Risk Plan ('CAARP') and defendants . . . are permanently restrained and enjoined from enforcing these provisions against CAARP . . . .

"2. The provisions of Insurance Code § 1861.03 subd. (a) and (b) apply to CAARP and its participating insurers except that pursuant to § 1861.03 subd. (b), the provisions of § 1861.03 subd. (a) shall not be construed to create liability for CAARP . . . for participation in the activities described in § 1861.03 subd. (b), Article 4 of Chapter 1 of Part 3 of Division 2 of the Insurance Code (Insurance Code § 11620, *et seq.*) and the regulations promulgated thereunder.

"3. The provisions of Insurance Code § 1861.05 subd. (a) do not apply to CAARP . . . .

"4. The provisions of Insurance Code § 1861.04, § 1861.05 subd. (b) through § 1861.10 subd. (b) and § 1861.13 shall be applicable to CAARP in connection with any request filed by CAARP or its Governing Committee for any amendment to CAARP's plan pertaining to revisions in premium rates . . . . Notwithstanding the foregoing, CAARP's obligations under Insurance Code § 1861.05 subd. (b) shall be identical with those presently required of CAARP under Insurance Code § 11620 and the applicable rules and regulations promulgated thereunder and a rate application filed by CAARP shall be deemed complete without the necessity of including data

referred to in §§ 1157.7 [*sic*], 1857.9, 1857.15 and 1864 of the Insurance Code. . . .

"5. Insurance Code § 1861.14 shall be applicable to CAARP and its participating insurers in connection with policies issued under assignment from CAARP to the extent that the foregoing provisions are applicable to CAARP or to policies issued under assignment from CAARP. . . ."

On December 20, 1989, a notice of appeal was filed by Insurance Commissioner Roxani Gillespie. In her opening and reply briefs, filed July 11, 1990, and October 11, 1990, respectively, Commissioner Gillespie argued that "[n]o provision of Proposition 103 should apply to CAARP" and that the superior court's judgment was improper in that it was the result of stipulations of the parties to issues of law.

Subsequent to the filing of the briefs in this case, John Garamendi was elected Insurance Commissioner and assumed office on January 7, 1991. On February 15, 1991, a substitution of counsel representing the commissioner was filed, and the commissioner requested, and we granted, permission to file supplemental briefs. In those briefs, Commissioner Garamendi challenges only that portion of the judgment declaring that section 1861.05, subdivisions (b) and (c), and sections 1861.06 through 1861.09 apply to requests for revisions of the rates set for automobile liability insurance policies issued under CAARP.[6] Commissioner Garamendi states: "The balance of the decision . . . is not being challenged by this appeal."

## DISCUSSION

The passage of Proposition 103 made "numerous fundamental changes in the regulation of automobile and other types of insurance." (*Calfarm Ins. Co. v. Deukmejian* (1989) 48 Cal.3d 805, 812 [258 Cal.Rptr. 161, 771 P.2d 1247].) Prior to passage of the initiative, California was "a so-called 'open rate' state, that is, rates [were] set by insurers without prior or subsequent approval by the Insurance Commissioner." (*King* v. *Meese* (1987) 43 Cal.3d 1217, 1221 [240 Cal.Rptr. 829, 743 P.2d 889].) The commissioner was

---

[6]We reject plaintiffs' contention, asserted in a footnote, that the commissioner may not raise this contention because the former commissioner had "urged the Superior Court to apply these provisions to CAARP and [failed] to object when the Superior Court did so." The commissioner is not barred from raising this issue on appeal, because the issue "involves purely a legal question which rests on an uncontroverted record which could not have been altered by the presentation of additional evidence. [Citations.]" (*In re Marriage of Broderick* (1989) 209 Cal.App.3d 489, 501 [257 Cal.Rptr. 397].)

empowered to prohibit an insurance rate only if " 'a reasonable degree of competition [did] not exist in the area' " and the rate was found to be " 'excessive, inadequate or unfairly discriminatory.' " (*Id.*, at pp. 1221-1222.)

Subsequent to passage of Proposition 103, "[e]very insurer which desires to change any rate shall file a complete rate application with the commissioner." (§ 1861.05, subd. (b).) "The commissioner shall notify the public of any [such] application." A hearing may be held if the commissioner, either on his or her own motion or pursuant to the request of a consumer, determines to do so and must be held, upon timely request, if the proposed rate increase exceeds seven percent for "personal lines" or 15 percent for "commercial lines." (§ 1861.05, subd. (c).) The initiative includes several provisions governing the conduct of such rate hearings.[7] The commissioner shall not approve a rate "which is excessive, inadequate, unfairly discriminatory or otherwise in violation of this chapter."[8] (§ 1861.05, subd. (a).)

■ The issue before us is whether the procedural provisions applicable to rate applications and hearings pursuant to section 1861.05 apply to hearings to establish rates for automobile insurance policies issued under CAARP.[9] CAARP was created in 1947 and has been described as follows: "In California, in addition to the regular and customary sources for the

---

[7]Section 1861.06 provides: "Public notice required by this article shall be made through distribution to the news media and to any member of the public who requests placement on a mailing list for that purpose."

Section 1861.07 provides: "All information provided to the commissioner pursuant to this article shall be available for public inspection . . . ."

Section 1861.08 provides: "Hearings shall be conducted pursuant to Section 11500 through 11528 of the Government Code, except that: (a) hearings shall be conducted by administrative law judges . . . ; (b) hearings are commenced by a filing of a Notice in lieu of Sections 11503 and 11504; (c) the commissioner shall adopt, amend or reject a decision only under Section 11517(c) and (e) and solely on the basis of the record; (d) Section 11513.5 shall apply to the commissioner; (e) discovery shall be liberally construed and disputes determined by the administrative law judge."

Section 1861.09 provides: "Judicial review shall be in accordance with Section 1858.6. For purposes of judicial review, a decision to hold a hearing is not a final order or decision; however, a decision not to hold a hearing is final."

Section 1861.055, which obligates the commissioner to "adopt regulations governing hearings required by subdivision (c) of Section 1861.05" was added by the Legislature subsequent to the trial court's ruling, and we express no opinion as to it.

[8]Section 1861.02, subdivision (a), enumerates several factors which insurers must apply in determining rates for automobile insurance.

[9]Section 11620 states, in pertinent part: "The commissioner, after a public hearing, shall approve or issue a reasonable plan for the equitable apportionment, among insurers admitted to transact liability insurance, of those applicants for automobile bodily injury and property damage liability insurance who are in good faith entitled to but are unable to procure such insurance through ordinary methods."

purchase of insurance coverage which most are familiar with, drivers may be insured through the California Automobile Assigned Risk Plan (CAARP). [Citation.] By statute this plan is available to any driver otherwise entitled to insurance but who has been unable in good faith to obtain it within the past 60 days. [Citations; fn. omitted.] All insurers are required to participate in the program. [Citation.]" (*King* v. *Meese, supra*, 43 Cal.3d 1217, 1222-1223; Cal. Code Regs., tit. 10, §§ 2400, 2430.)

"The CAARP rates are set by the Commissioner after public hearings, and are based on a number of classifications . . . . [¶] In most parts of the state, CAARP rates are higher than those offered by voluntary insurers." (*King* v. *Meese, supra*, 43 Cal.3d 1217, 1223.) The CAARP governing committee[10] annually recommends to the commissioner whether, and to what extent, the rates should be revised. (Cal. Code Regs., tit. 10, § 2421.10.)

In determining whether section 1861.05, subdivisions (b) and (c), and sections 1861.06 through 1861.09 apply to hearings involving the setting of rates for insurance policies issued under CAARP, we begin, as we must, with the statutory language itself. (*In re Lance W.* (1985) 37 Cal.3d 873, 886 [210 Cal.Rptr. 631, 694 P.2d 744].) Section 1861.13 states: "This article shall apply to all insurance on risks or on operations in this state, except those listed in Section 1851." Because assigned risk policies are not among the types of insurance listed in section 1851, Proposition 103 does not expressly exclude CAARP from its ambit. This, of course, does not end our analysis, because it does not follow that every provision in Proposition 103 automatically applies to insurance policies issued under CAARP. Rather, we must examine each provision individually, as did the superior court, to determine whether particular provisions apply in the circumstances here at issue.

Section 1861.05, subdivision (b), states: "Every insurer which desires to change any rate shall file a complete rate application with the commissioner." By its terms, this provision does not apply to revisions of the CAARP rates because, unlike the voluntary insurance market, individual insurers do not set, and therefore cannot change, rates for assigned-risk insurance. Rates for assigned-risk insurance are set by the commissioner, and all insurers issuing assigned-risk policies must charge these uniform rates. (Cal. Code Regs., tit. 10, §§ 2460, 2498.3, and 2498.5.) Individual insurers may not initiate proceedings to increase these rates. Rather, the CAARP governing committee annually reviews assigned-risk rates and, after consultation with

---

[10]Effective January 1, 1991, CAARP's governing committee was reconstituted and renamed the advisory committee. (§ 11623.)

subscribing insurers, may recommend revisions if warranted. (Cal. Code Regs., tit. 10, §§ 2421.9, 2421.10, and 2492.3.)

Section 1861.05, as a whole, clearly was drafted to apply to applications by individual insurers to change rates for insurance issued in the voluntary market and not to revisions of the rates for policies issued under CAARP. Subdivision (a) of that statute states that "[n]o rate shall be *approved* . . . which is excessive . . . or otherwise in violation of this chapter." (Italics added.) This statutory language refers to the procedure created by Proposition 103 in which the commissioner must approve applications by individual insurers to change the rate charged for insurance policies issued in the voluntary market. This section does not apply to policies issued under CAARP, because the commissioner does not "approve" rates for assigned-risk insurance; the commissioner sets those rates.

Subdivision (a) of section 1861.05 goes on to declare: "In considering whether a rate is excessive, . . . the commissioner shall consider whether the rate mathematically reflects the insurance company's investment income." The statute thus directs the commissioner, in considering an application by an individual insurer to change an insurance rate, to compare the proposed rate with the investment income of the insurance company making the application. This statutory language cannot readily be applied to the uniform rate set by the commissioner for assigned-risk policies. Because that rate applies uniformly to all insurers, the statutory reference to "*the* insurance company's investment income" (italics added) has no clear meaning in this context. No single, uniform rate could be expected to "mathematically reflect[ ] the . . . investment income" of each individual insurance company participating in CAARP.

Similarly, no apparent purpose would be served by applying to proceedings to set uniform rates for CAARP the requirement in subdivision (b) of section 1861.05 that a rate application "include all data referred to in Sections 1857.7, 1857.9, 1857.15, and 1864." Those sections (with the exception of section 1857.15, which was repealed in 1987) require individual insurers to provide detailed information concerning their operations. The need for such information is clear when the commissioner must review the rates charged by the individual insurer submitting the information but is far less apparent when the commissioner is called upon to set a uniform rate for assigned-risk insurance. In the latter circumstance, the type of information required is exemplified by California Code of Regulations, title 10, section 2492.3, which requires the manager of CAARP annually to "prepare a report from information submitted by members of the plan which shall set forth the

premium earned and losses incurred under policies issued pursuant to assignment under the plan."

It is plain from the foregoing that section 1861.05 refers only to applications filed by individual insurers to change the rate they charge for insurance in the automobile liability insurance voluntary market and does not apply to changes in the uniform rate established by the commissioner for assigned-risk automobile liability insurance.

Turning to sections 1861.06 and 1861.07, it is apparent that those sections do not apply to proceedings to set the rates for assigned-risk insurance, because they are limited by their language to the article in which they appear.[11] The provisions governing assigned-risk policies are not part of that article.

Section 1861.08 and section 1861.09 are not similarly limited by their terms to hearings required by subdivision (c) of section 1861.05 or to the article in which they appear. Therefore, we cannot determine from their statutory language alone whether these sections apply to hearings to determine the rate for assigned-risk insurance, and must seek guidance from the rules governing statutory interpretation.

■ "In construing constitutional and statutory provisions, whether enacted by the Legislature or by initiative, the intent of the enacting body is the paramount consideration. [Citations.]" (*In re Lance W., supra,* 37 Cal.3d 873, 889.) Section 1 of Proposition 103, entitled "Findings and Declaration," states, in pertinent part: "Enormous increases in the cost of insurance have made it both unaffordable and unavailable to millions of Californians. [¶] The existing laws inadequately protect consumers and allow insurance companies to charge excessive, unjustified and arbitrary rates. [¶] Therefore, the People of California declare that insurance reform is necessary. . . . [I]nsurance rates shall be maintained at fair levels by requiring insurers to justify all future increases." Section 2 of Proposition 103, entitled "Purpose," states, in pertinent part: " ' The purpose of this chapter is to protect consumers from arbitrary insurance rates and practices . . . .' " (Historical and Statutory Notes, 42A West's Ann. Ins. Code (1972 ed., 1991 pocket supp.) § 1861.01, pp. 102-103.)

■ Proposition 103 was intended, therefore, to avoid excessive and arbitrary insurance rates by prohibiting insurance companies from raising

[11]Section 1861.06 states: "Public notice required by this article shall be made through . . . ."
Section 1861.07 states: "All information provided to the commissioner pursuant to this article shall be available for public inspection . . . ."

their rates without the approval of the commissioner, "who may not approve rates which are 'excessive, inadequate, unfairly discriminatory or otherwise in violation of [the initiative].' " (*Calfarm Ins. Co.* v. *Deukmejian, supra,* 48 Cal.3d 805, 813.) ■ This purpose of imposing significant restrictions upon the rates charged by insurance companies, which rates previously had been only minimally regulated, does not apply to assigned-risk insurance policies. The rates charged for assigned-risk insurance were closely regulated before the passage of Proposition 103. In fact, prior to Proposition 103, the regulations promulgated by the commissioner already required CAARP's governing committee to make an annual recommendation for revision of the rates for assigned-risk insurance "to the end that such rates and added surcharges shall be neither excessive, inadequate or unfairly discriminatory." (Cal. Code Regs., tit. 10, § 2421.10.)

Accordingly, we conclude Proposition 103 was intended to impose significant controls upon the setting of rates for insurance in the voluntary market and was not intended to alter the procedures for establishing the uniform rate set by the commissioner for assigned-risk insurance. Because, as discussed above, the other provisions enacted pursuant to Proposition 103 relating to hearings apply only to applications by individual insurers to change their rates for insurance in the voluntary market, it is reasonable to conclude that sections 1861.08 and 1861.09 also were intended to apply only to hearings conducted for that purpose and not to other types of hearings such as those to establish the uniform rate for policies issued under CAARP.

We also note that section 1861.09 declares that "[j]udicial review shall be in accordance with Section 1858.6."[12] Application of section 1858.6 is limited by its terms to decisions of the commissioner made "under this chapter." That chapter includes the provisions enacted as a result of Proposition 103 but does not include the provisions governing CAARP.

Accordingly, we conclude the superior court erred in declaring that section 1861.05, subdivisions (b) and (c), and sections 1861.06 through 1861.09, inclusive, apply to hearings to set rates for automobile liability policies issued under CAARP.[13]

---

[12]Section 1858.6 states, in pertinent part: "Any finding, determination, rule, ruling or order made by the commissioner under this chapter shall be subject to review by the courts of the State and proceedings on review shall be in accordance with the provisions of the Code of Civil Procedure. In such proceedings on review, the court is authorized and directed to exercise its independent judgment on the evidence and unless the weight of the evidence supports the findings, determination, rule, ruling or order of the commissioner, the same shall be annulled."

[13] Written motions were filed by the commissioner on July 11, 1990, and by plaintiffs on April 17, 1991, requesting that this court take judicial notice of various documents concerning applications by CAARP to increase the rates for assigned-risk insurance. (Evid. Code, §§ 452,

## DISPOSITION

That portion of the judgment declaring that section 1861.05, subdivisions (b) and (c), and sections 1861.06 through 1861.09, inclusive, apply to hearings to set rates for automobile liability policies issued under CAARP is reversed. The judgment is affirmed in all other respects. The commissioner shall recover his costs on appeal.

Goertzen, J., and Epstein, J., concurred.

A petition for a rehearing was denied August 20, 1991, and respondents' petition for review by the Supreme Court was denied October 17, 1991. George, J., did not participate therein.

---

453.) No objection having been made to either request, we grant both requests for judicial notice.