[No. C050668. Third Dist. June 6, 2007.]

WESTCON CONSTRUCTION CORPORATION, Plaintiff and Appellant, v. COUNTY OF SACRAMENTO, Defendant and Respondent.

COUNSEL

Cassinat Law Corporation, John E. Cassinat and Brian S. Barrad for Plaintiff and Appellant.

Robert A. Ryan, Jr., County Counsel, and Ray C. Thompson, Deputy County Counsel, for Defendant and Respondent.

OPINION

HULL, J.—Plaintiff, Westcon Construction Corporation (Westcon), appeals from a judgment of dismissal following a grant of summary judgment to defendant, County of Sacramento (the County). The trial court concluded Westcon's claim for breach of contract stemming from a construction project was barred by Westcon's failure to provide the County with notice of its claim within one year of accrual, as required by the Government Claims Act (Gov. Code, § 900 et seq.). Westcon contends the period for submitting a Government Claims Act claim was tolled while the parties attempted to resolve a related claim submitted by Westcon under the Public Contract Code. Westcon further contends it substantially complied with the claim-filing requirement of the Government Claims Act. We reject these contentions and affirm the judgment.

FACTS AND PROCEEDINGS

On review of an order granting summary judgment, we construe the evidence in the light most favorable to the opposing party. (*Molko v. Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].)

On August 15, 2000, the County awarded a contract to Westcon to construct a security fence at the Sacramento County Boys Ranch (the project). During construction, various changes were made to the project and delays were encountered. Westcon requested extensions on the completion date and additional compensation.

On May 15, 2001, Westcon requested final inspection of the project. On June 14, 2001, Westcon gave the County notice of final completion and informed the County it had performed over $300,000 in extra work.

On September 6, 2001, the County recorded a notice of completion of the project.

On October 2, 2001, Westcon again informed the County there were approximately $300,000 worth of change order requests outstanding. Westcon indicated it would be filing a claim for finance charges and requested a time and place to meet to discuss these matters. The County responded that most of the delays had been caused by contractor-related issues and offered to review any claims demonstrated to have been caused solely by the County.

On November 12, 2001, Westcon sent the County a "Change Order Request Log" for the project and reiterated that approximately $300,000 plus finance charges was due. The County responded, acknowledging that several items claimed were undisputed while others had previously been rejected. The County indicated it would review the merits of certain claims upon submission of adequate documentation.

The parties met on December 13, 2001. At the conclusion of this meeting, the County insisted that Westcon provide a firm claim amount and documentation in support.

On March 21, 2002, the County informed Westcon that all work on the project was complete and a one-year guarantee period had begun. The County stated a $5,000 retention amount would be released. On March 26, the County disbursed a final payment of $5,000 to Westcon.

On April 18, 2002, Westcon sent a packet of information supporting its claim for additional compensation to Scott Maddux, the County's engineer in charge of the project.

On July 16, 2002, the County issued a final acceptance of the project.

The County never acknowledged receipt of the claim packet sent by Westcon in April 2002. In April or May of 2003, Westcon learned the County was claiming it never received the packet.

Westcon resent the claim packet on June 9, 2003, asserting an amount due of $353,926.04.

On July 1, 2003, the County rejected Westcon's claim as untimely. The County directed Westcon to file a formal claim with the board of supervisors.

On December 30, 2003, Westcon submitted to the board of supervisors a Government Claims Act claim in the amount of $353,926.04. On January 21, 2004, the County rejected the claim, indicating it was both untimely and without merit. The County informed Westcon it had six months to file suit.

Westcon filed the present matter on March 17, 2004. The County moved for summary judgment, asserting Westcon's Government Claims Act claim was untimely. Westcon opposed the motion, arguing the period for filing a claim had been tolled during negotiations to resolve its claim under the Public Contract Code, which claim was submitted on June 9, 2003. Westcon further argued that, even if the Government Claims Act claim was untimely, the packet of information resubmitted on June 9, 2003, was timely and substantially complied with the Government Claims Act. In addition, Westcon argued, any defect in the June 9 packet was waived by the County in its July 1 response.

The trial court granted the motion for summary judgment. The court concluded Westcon was asserting the contract had been breached during Westcon's performance, and such performance ended either on June 2, 2001, when the County took possession of the improvements; March 20, 2002, when the County tendered final payment on the contract; or July 16, 2002, when the project was formally accepted by the County. Using the latter of these dates, the claim filed on December 30, 2003, more than a year later, was untimely. The court further concluded the packet of information submitted on June 9, 2003, was not a claim under the Government Claims Act, because it was not sent to the board of supervisors. Also, because the June 9 packet was not an attempt to comply with the Government Claims Act, the rejection of that claim did not have to comply with that act and, hence, there was no waiver of defects. Finally, the court concluded the June 9 packet was not a claim under the Public Contract Code, because it was not submitted on or before final payment, which occurred in March 2002.

Judgment was thereafter entered for the County.

DISCUSSION

I

*Introduction*

A motion for summary judgment is properly granted if the moving papers establish there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) Summary judgment "provide[s] courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 844 [107 Cal.Rptr.2d 841, 24 P.3d 493].) Under "[t]he historic paradigm for our de novo review of a motion for summary judgment . . . [w]e first identify the issues framed by the pleadings since it is these allegations to which the motion must respond. We then determine if the moving party has established a prima facie entitlement to judgment in its behalf. Only if the moving party has satisfied this burden do we consider whether the opposing party has produced evidence demonstrating there is a triable issue of fact with respect to any aspect of the moving party's prima facie case." (*Rio Linda Unified School Dist. v. Superior Court* (1997) 52 Cal.App.4th 732, 734–735 [60 Cal.Rptr.2d 710].)

The present matter involves a claim for breach of contract against a local public entity.

■ Before a complaint may be filed against a public entity, the entity must be presented with a claim in the form required by the Government Claims Act. (Gov. Code, § 945.4.) "The public entity has 45 days to grant or deny the claim; if the claim is not acted upon within 45 days, it is deemed rejected. ([Gov. Code,] § 912.4.) If written notice of rejection is sent, suit must be brought within six months. ([Gov. Code,] § 945.6, subd. (a)(1).) If no written notice is given, the claimant is allowed two years from the accrual date to file the suit. ([Gov. Code,] § 945.6, subd. (a)(2).)" (*Chalmers v. County of Los Angeles* (1985) 175 Cal.App.3d 461, 464 [221 Cal.Rptr. 19].)

A claim for breach of contract must be presented to the public entity within one year of accrual of the cause of action. (Gov. Code, § 911.2.)

In its motion for summary judgment, the County contended Westcon failed to submit a claim under the Government Claims Act within one year of accrual of its cause of action. The trial court agreed and granted the motion.

On appeal, Westcon contends the County was not entitled to summary judgment, because it failed to establish the date on which Westcon's claim

accrued. Westcon further contends evidence was presented in opposition to the County's motion establishing that Westcon filed a Public Contract Code claim and such claim tolled the statutory period for filing a claim under the Government Claims Act. Finally, Westcon contends the claim packet submitted to the County on June 9, 2003, substantially complied with the Government Claims Act. As we shall explain, none of these contentions has merit.

## II

### *Date of Accrual*

Westcon contends the County was not entitled to summary judgment, because it failed to establish the date upon which Westcon's claim for breach of contract accrued. Westcon argues the County instead presented evidence of three possible dates of accrual. According to Westcon, the County's "failure to establish a date as a matter of <u>undisputed fact</u>" is a "fatal defect" in its motion for summary judgment. We disagree.

In order to obtain summary judgment, the County was not required to establish as an undisputed fact the date of accrual of Westcon's cause of action. All the County was required to prove was that Westcon's Government Claims Act claim was submitted more than one year after accrual.

The County presented evidence that Westcon's Government Claims Act claim was submitted on December 30, 2003. Therefore, the County was only required to establish that Westcon's claim accrued before December 30, 2002. The County asserted the claim accrued either on June 2, 2001, when the County took possession of the improvements; March 20, 2002, when the County tendered final payment on the contract; or July 16, 2002, when the project was formally accepted by the County. Because each of these dates preceded December 30, 2002, it was unnecessary for the County to prove which of them was the correct one.

## III

### *Tolling*

Westcon contends the period for submitting its claim under the Government Claims Act was tolled while the parties attempted to resolve Westcon's Public Contract Code claim. The latter claim, Westcon argues, was not resolved until July 1, 2003, when it was expressly rejected by the County. Westcon submitted its Government Claims Act claim within one year of that date.

Division 2, part 3 of the Public Contract Code governs contracts between local public entities and contractors. Chapter 1, article 1.5, of this part (Pub. Contract Code, § 20104 et seq.) concerns the resolution of construction claims not exceeding $375,000. (Pub. Contract Code, § 20104, subd. (a)(1).) Within this article, section 20104.2 addresses the presentation of such claims to the local public entity.

■ Such a claim must "be in writing and include the documents necessary to substantiate the claim." (Pub. Contract Code, § 20104.2, subd. (a).) It must also be filed "on or before the date of final payment." (Pub. Contract Code, § 20104.2, subd. (a).) For claims of over $50,000, the local agency must either (1) respond in writing within 60 days, or (2) within 30 days, request additional documentation. (Pub. Contract Code, § 20104.2, subd. (c)(1).) If additional documentation is requested, it shall be provided "upon mutual agreement of the local agency and the claimant." (Pub. Contract Code, § 20104.2, subd. (c)(2).) Upon receipt of further documentation, the local agency shall respond to the claim within 30 days "or within a period of time no greater than that taken by the claimant in producing the additional information or requested documentation, whichever is greater." (Pub. Contract Code, § 20104.2, subd. (c)(3).) If the claimant disputes the agency's response, or the agency fails to respond, the claimant may notify the agency within 15 days and "demand an informal conference to meet and confer for settlement of the issues in dispute." (Pub. Contract Code, § 20104.2, subd. (d).) The agency must then schedule a conference within 30 days. (*Ibid.*)

■ If the matter or any portion thereof remains in dispute following the meet and confer conference, the claimant may file a claim under the Government Claims Act. (Pub. Contract Code, § 20104.2, subd. (e).) For purposes of that act, the period for submitting a claim is tolled "from the time the claimant submits his or her [Public Contract Code claim] until the time that claim is denied as a result of the meet and confer process, including any period of time utilized by the meet and confer process." (*Ibid.*)

Westcon contends it submitted a claim under the Public Contract Code prior to final payment on the project, which occurred on March 26, 2002. Westcon argues either of two letters satisfies the claim requirement. The first letter was sent to Scott Maddux, a county engineer in charge of the project, on October 2, 2001. It read: "The County of Sacramento filed the notice of completion for this project on September 6, 2001. We need to reach resolution on approximately $300,000.00 worth of outstanding change order requests per the attached log. [¶] We have not received a reply to most of these change order requested [*sic*]. What is their status? Please identify when and where the County would like to discuss and resolve these issues." Accompanying this letter was a log listing changes or additions to the project.

The second letter, dated November 12, 2001, was sent to Mark Carruesco, a "high level" county supervisor on the project. It read: "Please find attached Westcon Construction Corp's current Change Order Request log for the above referenced project. It has been quite some time since we have heard from the County regarding these outstanding issues. Excluding finance charges, almost $300,000.00 worth of force account work, change order requests and claims are still pending on this project. [¶] Please advise us as soon as possible when a meeting can be arranged to discuss and resolve these issues. If you have any questions or comments, please contact me." Accompanying this letter was a "Change Order Request Log" itemizing pending change order requests.

Westcon contends the County responded to both of these letters with requests for more documentation to substantiate the claims. On October 5, 2001, the County responded to Westcon's October 2 letter, asserting "the bulk of the delays in the County's processing of payments for change order work" stemmed from "contractor related issues." Nevertheless, the County agreed to "review any late payment impact claims that are demonstrated to have been solely caused by the County" and requested "adequate back-up and substantiation of responsibility" for such claims.

On November 20, 2001, the County responded to Westcon's November 12 letter. That response read: "We have reviewed your above referenced letter and table of claimed outstanding change order/claim items. Several items are undisputed and we are simply waiting to resolve final costs to incorporate into the next contract change order. . . . Our records indicate we are waiting for Westcon Construction to resubmit cost information of several of these items. Three of the listed items . . . have been previously rejected as being invalid change order items." The County went on to explain that Westcon had not submitted sufficient information to allow review of other claims and asserted the County would "gladly review the merits of these items upon submission of the required substantiated documentation." Finally, the County expressed its willingness to meet and discuss the disputed items once adequate documentation was submitted.

The parties met on December 13, 2001, to discuss Westcon's claims. At the conclusion of that meeting, the County insisted that Westcon provide a firm claim amount and documentation in support.

Westcon provided the requested documentation in a packet of materials sent to the County in April 2002 and resent in June 2003. In July 2003, the County rejected Westcon's claim as untimely.

Westcon contends either the October or the November 2001 letter, with attached list of changes, constituted a claim within the meaning of the Public

Contract Code. According to Westcon, what followed were attempts by the parties to resolve the claim, including a meet and confer conference in December 2001. This dispute resolution process continued, Westcon argues, until July 2003, when the County formally rejected the claim. Westcon filed its Government Claims Act claim in December 2003, within a year of the County's July 2003 rejection.

The County responds that Westcon has forfeited this contention on appeal by failing to raise it in the trial court. In response to the County's motion for summary judgment, Westcon argued the period for submitting a claim under the Government Claims Act was tolled during resolution of the Public Contract Code claim. However, at the time, Westcon identified the Public Contract Code claim as either the April 2002 or the June 2003 packet of documentation submitted to the County, not the October or November 2001 letters. No doubt recognizing that the April 2002 and June 2003 packets were sent after final payment on the contract, and were therefore untimely for purposes of the Public Contract Code, Westcon has chosen to change its theory on appeal as to when the Public Contract Code claim was initiated.

■ "Ordinarily the failure to preserve a point below constitutes a waiver of the point. [Citation.] This rule is rooted in the fundamental nature of our adversarial system: The parties must call the court's attention to issues they deem relevant. ' "In the hurry of the trial many things may be, and are, overlooked which could readily have been rectified had attention been called to them. The law casts upon the party the duty of looking after his legal rights and of calling the judge's attention to any infringement of them." ' [Citation.] . . . [¶] The same policy underlies the principles of 'theory of the trial.' 'A party is not permitted to change his position and adopt a new and different theory on appeal. To permit him to do so would not only be unfair to the trial court, but manifestly unjust to the opposing party.' [Citation.] The principles of 'theory of the trial' apply to motions [citation], including summary judgment motions. [Citation.] . . . It would be manifestly unjust to the opposing parties, unfair to the trial court, and contrary to judicial economy to permit a change of theory on appeal." (*North Coast Business Park v. Nielsen Construction Co.* (1993) 17 Cal.App.4th 22, 28–29 [21 Cal.Rptr.2d 104]; see also *Saville v. Sierra College* (2005) 133 Cal.App.4th 857, 872–873 [36 Cal.Rptr.3d 515].)

Westcon argues the County's forfeiture argument is "ridiculous," because Westcon "is not newly arguing the existence or effect of the October 2, 2001 letter" and "made no shift in it's [*sic*] 'theory of the trial.' " Westcon points out that the County's own separate statement mentioned the October 2, 2001, letter. The County stated as an undisputed fact: "On October 2, 2001, Westcon wrote to the County stating its intent to file a claim for finance

charges for all force account work performed under the Contract." In its response to the separate statement, Westcon acknowledged it was undisputed "that in October 2001, settlement negotiations were in progress." According to Westcon, the mention of negotiations in its response demonstrates that Westcon considered the October 2001 letter to be part of the negotiation process then underway to resolve Westcon's claim.

Westcon's arguments betray its own confusion. On the one hand, Westcon says the October 2001 letter initiated a claim under the Public Contract Code; on the other hand, that letter was part of the negotiations underway to resolve the Public Contract Code claim. If the October 2001 letter was part of the ongoing negotiations, then the claim must have been submitted earlier.

At any rate, the fact that both the County and Westcon mentioned the October 2001 letter in their factual submissions is a far cry from establishing that their theory below centered on the October 2001 letter being the initiation of a claim under the Public Contract Code. Rather, Westcon's theory in the trial court was that the June 9, 2003, packet of documentation was the claim. Even if the October 2001 letter was part of ongoing negotiations between the parties, this does not prove those negotiations were pursuant to the Public Contract Code. On the contrary, the parties' conduct following the October 2001 letter does not track the procedures outlined in the Public Contract Code. The Public Contract Code contemplates a request for additional documentation by the public entity, submission of additional documentation, rejection by the public entity, a request for a meeting by the claimant, a meet and confer conference, and, if disputes remain, a Government Claims Act claim. Here, the County requested additional information in its responses to the October and November letters and the parties met in December 2001 to discuss the dispute. However, no additional documentation was submitted until *after* the December 2001 meeting.

Westcon contends it briefed the factual circumstances surrounding its October 2001 correspondence with the County in its points and authorities in opposition to the motion for summary judgment. However, the only reference provided by Westcon is to that portion of its opposing brief where Westcon argued the June 2003 packet constituted the Public Contract Code claim.

Westcon contends it is nevertheless entitled to raise a new argument on appeal because our review is de novo. Westcon argues an exception to the rule against raising new arguments on appeal is recognized where "an issue 'involves purely a legal question which rests on an uncontroverted record which could not have been altered by the presentation of additional evidence.' " Westcon cites as support *California Auto. Assigned Risk Plan v. Garamendi* (1991) 232 Cal.App.3d 904 [283 Cal.Rptr. 562] (*CAARP*) and *Wilson v. Lewis* (1980) 106 Cal.App.3d 802 [165 Cal.Rptr. 396] (*Wilson*).

In *CAARP*, the Insurance Commissioner argued on appeal that the hearing procedures established by Proposition 103 (Ins. Code, §§ 1861.05, subds. (b), (c), 1861.06–1861.09) apply to rate-setting hearings for automobile policies issued under the assigned-risk plan. (*CAARP*, *supra*, 232 Cal.App.3d at p. 907.) In a footnote, the court rejected the plaintiff's argument that this issue could not be raised for the first time on appeal. According to the court: "The commissioner is not barred from raising this issue on appeal, because the issue 'involves purely a legal question which rests on an uncontroverted record which could not have been altered by the presentation of additional evidence.' " (*Id.* at p. 909, fn. 6.)

In *Wilson*, the court concluded the critical issue of the dispute was the legal effect of a conditional and postdated " 'good faith' " deposit check upon a contract to sell residential property. (*Wilson*, *supra*, 106 Cal.App.3d at p. 805.) The court noted the issue had been raised by the pleadings and the evidence on it was undisputed, but it was not mentioned at trial. The court concluded the issue could be considered on appeal, because it was a "pure question of law" based on "noncurable undisputed evidence." (*Ibid.*)

■ Unlike the foregoing cases, the present matter does not involve a pure question of law based on undisputed and noncurable evidence. This is instead a shift in factual theory from one in which the June 2003 packet constituted the Public Contract Code claim to one in which the October 2001 letter was the claim. A "claim" under the Public Contract Code includes any separate demand for "payment of money or damages arising from work done by, or on behalf of, the contractor pursuant to the contract for a public work and payment of which is not otherwise expressly provided for or the claimant is not otherwise entitled." (Pub. Contract Code, § 20104, subd. (b)(2).) In order to set the Public Contract Code claims resolution wheels in motion, the claim must be in writing and "include the documents necessary to substantiate the claim." (Pub. Contract Code, § 20104.2, subd. (a).) By virtue of Westcon's change in factual theory, one of the questions that would have to be resolved is whether the October 2001 letter amounted to a claim within the meaning of the Public Contract Code definition. This will depend on whether the documentation accompanying the letters was sufficient to substantiate the claim. This is not a pure question of law based on undisputed and noncurable evidence.

But even if we were to allow Westcon to argue for the first time on appeal that a Public Contract Code claim was submitted in October or November of 2001, the end result would be the same. Assuming either the October or the November letter was a Public Contract Code claim, the evidence presented below suggests such claim was effectively rejected more than a year before Westcon submitted its Government Claims Act claim.

The record contains no evidence of anything occurring between the parties after the December 2001 meeting until March 19, 2002. In his declaration in support of the County's motion for summary judgment, Scott Maddux stated:

"12. On or about March 19, 2002, I caused a letter to be issued to the Sacramento County Board of Supervisors seeking approval of a change order number 5 to the Contract in order to pay for additional work performed by Westcon under the Contract. In so doing, I also disclosed to the Board of Supervisors that Westcon's owner had informed me of his intent to prepare a claim seeking further compensation in an unknown amount arising from this Contract. The Board of Supervisors did approve change order number 5. . . .

"13. On or about March 21, 2002, I caused a letter to be issued to Westcon informing Westcon that all work under the Contract was complete as of March 21, 2002, that field acceptance under Section G5-19 of the Contract's Standard Construction Specifications would be effective as of that date, and that the one-year guarantee period stated under the Contract would be deemed to have commenced when the County took beneficial occupancy of the improvements on June 2, 2001. . . .

"14. On or about March 20, 2002, I caused a memorandum to be issued, with copy sent to Westcon, for the purpose of releasing all of Westcon's remaining Contract retention in the amount of $5,000. . . .

"15. On or about March 26, 2002, pursuant to my authorization, the County issued its warrant number 1000981315 in the amount of $5,000 payable to Westcon as a release of all remaining retention withheld from payment due Westcon under the Contract. . . . Under the Contract, tender of final payment 'shall constitute denial by the [County] of any unresolved claim of the Contractor not specifically excepted by the [County]. . . .'"

Among the documents submitted by the County in support of its motion for summary judgment are the contract between the parties and excerpts from the County's standard construction specifications, which were incorporated into the contract. Specification G8-09 states: "As soon as possible after the completion of the work and receipt of all documentation required to be submitted by the Contractor is received, the Engineer shall make up the final estimate of the total amount of work done, segregated as to contract item quantities and contract change order work, and the value of such work; and this amount, after deducting all previous payments and all amounts to be deducted and retained under the provisions of the contract, shall constitute the final payment. . . . [¶] . . . [¶]

"If, after thirty-five (35) days from the date of acceptance of the contract and filing of Notice of Completion, no liens or claims have been filed against

the Contractor on account of the performance of this contract, the County will pay the entire sum found due as provided above. Tender of this payment shall constitute denial by the Engineer of any unresolved claim of the Contractor not specifically excepted in writing by the Engineer. The acceptance by the Contractor of the final payment shall operate as, and shall be, a release to the County and its agents, from any and all claims or liability on account of work performed under this contract or any alterations thereof . . . ."

In its opposition to the motion for summary judgment, Westcon presented nothing to refute the application of the foregoing provisions of the contract or the final payment by the County. Consequently, upon payment by the County and receipt by Westcon of the final payment in March 2002, all remaining claims of Westcon had effectively been denied by the County. And even if Westcon could present evidence suggesting the final payment did not operate as a denial of its purported October or November 2001 Public Contract Code claim, this merely points up the problem with Westcon's change of theory on appeal. Had Westcon asserted the Public Contract Code claim had been submitted before final payment, the County would have been alerted to the need to present further evidence on the matter.

## IV

### *Waiver*

Westcon contends the County waived the untimeliness of its Government Claims Act claim by failing to give notice of rejection of the claim in the proper form. The County's rejection letter read:

"Notice is hereby given that the claim of Westcon Construction Corporation ('Westcon') filed with the County of Sacramento on December 30, 2003, was rejected on January 21, 2004. The County rejected this claim for failure to present the claim the [*sic*] within the time prescribed by Government Code section 911.2. Furthermore, the claim is without merit.

### "WARNING

"Subject to certain exceptions, Westcon has only six (6) months after the date of [*sic*] this notice was personally delivered or deposited in the mail to file a state court action on this claim. See Government Code section 945.6.

"You may seek the advice of an attorney of your choice in connection with this matter. If you desire to consult an attorney, you should do so immediately." (Boldface omitted.)

Westcon contends the foregoing notice did not comply with Government Code section 911.3. It reads: "(a) When a claim that is required by Section 911.2 to be presented not later than six months after accrual of the cause of action is presented after such time without the application provided in Section 911.4 [application to file a late claim], the board or other person designated by it may, at any time within 45 days after the claim is presented, give written notice to the person presenting the claim that the claim was not filed timely and that it is being returned without further action. . . ." (§ 911.3, subd. (a).) This is followed by a description of the proper form of notice.

Government Code section 911.3 is not applicable here. As noted earlier, the claim at issue here is one for breach of contract, which is not one required by Government Code section 911.2 to be filed within six months.

■ Westcon next cites Government Code sections 915.4 and 911.8. However, Government Code section 915.4 does not concern the form of notice but how notice is to be delivered. It permits personal service or mailing to the address stated in the claim. Government Code section 911.8 reads: "(a) Written notice of the board's action upon the application shall be given in the manner prescribed by Section 915.4. [¶] (b) If the application is denied, the notice shall include a warning in substantially the following form . . . ." Government Code section 911.8 follows on the heels of Government Code sections 911.4 and 911.6. Section 911.4 sets forth the procedure for presenting an application to file a late claim; section 911.6 sets forth the circumstances under which such application should be granted. Considering these enactments as a whole, as we must (*County of Fresno v. Clovis Unified School Dist.* (1988) 204 Cal.App.3d 417, 426 [251 Cal.Rptr. 170]), the word "application" as used in Government Code section 911.8 means an application to file a late claim. Thus, that provision is not applicable to the present matter, where Westcon never submitted an application to file a late claim.

■ Finally, Westcon cites Government Code section 910.8. It reads: "If, in the opinion of the board or the person designated by it, a claim as presented fails to comply substantially with the requirements of Sections 910 and 910.2, or with the requirements of a form provided under Section 910.4 if a claim is presented pursuant thereto, the board or the person may, at any time within 20 days after the claim is presented, give written notice of its insufficiency, stating with particularity the defects or omissions therein. . . ." (§ 910.8.) However, this section applies to defects in the form of the Government Claims Act claim, not its timeliness. Sections 910, 910.2 and 910.4 all concern the proper form of a claim.

V

*Substantial Compliance*

Westcon contends the packet of documents submitted to the County on June 9, 2003, substantially complied with the claim-filing requirement of the Government Claims Act and, using the July 22, 2002, project completion date as the date of accrual, was timely. Westcon further contends any defect in the June 9, 2003, submittal was waived by the County. We reject both contentions.

The Government Claims Act requires only substantial compliance with the claims presentation requirement. (*Schaefer Dixon Associates v. Santa Ana Watershed Project Authority* (1996) 48 Cal.App.4th 524, 533 [55 Cal.Rptr.2d 698].) In *City of San Jose v. Superior Court* (1974) 12 Cal.3d 447 [115 Cal.Rptr. 797, 525 P.2d 701], the state high court adopted a two-part test for determining whether there has been substantial compliance with the Government Claims Act: "Is there *some* compliance with *all* of the statutory requirements; and, if so, is this compliance sufficient to constitute *substantial* compliance?" (*City of San Jose,* at pp. 456–457.)

Westcon contends the June 9, 2003, submittal contained all the information required for a perfect claim under the Government Claims Act. However, if this were so, there would be no need for Westcon to resort to a theory of substantial compliance. What is missing, as Westcon recognizes, is that the June 9, 2003, materials were not sent to the County's governing body but to a county employee, Scott Maddux.

Government Code section 915 requires that a claim against a local public entity be presented by either "[d]elivering it to the clerk, secretary or auditor" of the entity, or "[m]ailing it to the clerk, secretary, auditor, or to the governing body at its principal office." (Gov. Code, § 915, subd. (a)(1), (2).) Westcon does not assert Maddux is the clerk, secretary or auditor of the County.

The claim-filing requirement of the Government Claims Act serves several purposes: (1) to provide the public entity with sufficient information to allow it to make a thorough investigation of the matter; (2) to facilitate settlement of meritorious claims; (3) to enable the public entity to engage in fiscal planning; and (4) to avoid similar liability in the future. (*TrafficSchoolOnline, Inc. v. Clarke* (2003) 112 Cal.App.4th 736, 742 [5 Cal.Rptr.3d 408].) Notice to a subordinate employee of the public entity may not serve these purposes. As is often the case, the individual known to the claimant may be the very person who committed the wrongdoing that is the subject of the claim. This

may be the last person who would want to pass a claim on to his or her employer. Thus, giving notice to a subordinate employee may not assure that the public entity has an opportunity to review the claim before suit is filed.

Westcon contends the County nevertheless had actual notice of the claim. Government Code section 915, subdivision (d), reads: "A claim, amendment or application shall be deemed to have been presented in compliance with this section even though it is not delivered or mailed as provided in this section if it is actually received by the clerk, secretary, auditor or board of the local public entity . . . within the time prescribed for presentation thereof." (Gov. Code, § 915, subd. (d).) Westcon contends the County had actual knowledge of its June 9, 2003, claim, because "[t]here is no question that Scott Maddux was communicating directly with the County Board of Supervisors" and "[i]t is undisputed that the Board had actual knowledge of [Westcon's] claim and the Board acted on the advice of Scott Maddux." According to Westcon, "Scott Maddux oversaw construction management of the [project] and reported the status of monetary claims directly to the Board."

 Westcon cites no evidence in support of the foregoing assertions. Except for seeking a change order approval, there is no evidence that Maddux, a civil engineer working for the County on the project, ever communicated directly with the County board of supervisors on the project. But even if he did, there is no evidence he discussed Westcon's June 9, 2003, claim with the board or that the board was ever informed by anyone else of such claim or any other claims asserted by Westcon for additional payment on the project. The burden was on Westcon to prove actual notice. (*Jamison v. State of California* (1973) 31 Cal.App.3d 513, 518 [107 Cal.Rptr. 496] (*Jamison*).)

Westcon contends the claim-filing requirement is met if the circumstances are such that the claim *should have been* received by the proper board. Westcon cites *Jamison, supra,* 31 Cal.App.3d 513, and *Elias v. San Bernardino County Flood Control Dist.* (1977) 68 Cal.App.3d 70 [135 Cal.Rptr. 621] (*Elias*). In *Jamison,* the claimant was injured in an accident with a truck driven by an employee of the state Department of Water Resources and submitted a claim to that department. (*Jamison, supra,* at p. 515.) However, the claim was supposed to be served on the State Board of Control. The Court of Appeal concluded there was substantial compliance with the claim-filing requirement, because it was the duty of the officer of the Department of Water Resources to forward it to the State Board of Control. (*Id.* at p. 518.)

In *Elias,* the claimant was injured when his truck overturned on a dirt road leading to a county dump. He submitted a claim to the county board of

supervisors rather than the proper party, the county flood control district. (*Elias, supra*, 68 Cal.App.3d at p. 72.) However, because essentially the same people made up the board of supervisors and the flood control board, the court concluded there had been substantial compliance with the claim-filing requirement. (*Id.* at p. 75.)

■ The present matter is readily distinguishable from the foregoing cases. In those cases, the claim was served on the proper officer of the wrong agency, but an agency nevertheless closely related to the correct agency. Hence, notice of the claim to the proper party was assured, and the purpose of the claim-filing requirement was met. Here, however, there is no reason to believe a claim submitted to Maddux would reach the County board of supervisors. In *Jamison*, the court said: "Where a claim is filed with the proper *entity*, although with the wrong statutory official thereof, the doctrine of substantial compliance will save the claim if the claim was *actually received* by the statutory officer. [Citations.] But where there is a complete failure to serve any responsible officer of the entity, the doctrine does not apply." (*Jamison, supra*, 31 Cal.App.3d at p. 517.) Here, there was a complete failure to serve a responsible officer of the County.

■ Westcon contends the present matter involves a "claim as presented" and the County's response to that claim was faulty, resulting in a waiver of the County's objections to the late submittal. "A 'claim as presented' is a claim that is defective in that it fails to comply substantially with Government Code sections 910 and 910.2, but nonetheless puts the public entity on notice that the claimant is attempting to file a valid claim and that litigation will result if it is not paid or otherwise resolved. A 'claim as presented' triggers a duty on the part of the governmental entity to notify the claimant of the defects or omissions in the claim. A failure to notify the claimant of the deficiencies in a 'claim as presented' waives any defense as to its sufficiency. [Citations.] A document will be deemed a 'claim as presented' 'if it discloses the existence of a "claim" which, if not satisfactorily resolved, will result in a lawsuit against the entity. [Citation.] A public entity's receipt of written notice that a claim for monetary damages exists and that litigation may ensue places upon the public entity the responsibility, and gives it the opportunity, to notify the potential plaintiff pursuant to [Government Code] sections 910.8 and 911 of the defects that render the document insufficient under [Government Code] sections 910 and 910.2 and thus might hamper investigation and possible settlement of the claim.' . . ." (*Alliance Financial v. City and County of San Francisco* (1998) 64 Cal.App.4th 635, 643–644 [75 Cal.Rptr.2d 341].)

The present matter does not involve a claim as presented. The June 9, 2003, packet was not deficient as a claim because it failed to satisfy Government Code sections 910 and 910.2, which relate to the content of the

claim. Rather, the June 9, 2003, packet was deficient as a claim because it was not sent to the proper authority.

In the present matter, Westcon asserted a right to additional payment on the project as early as 2001. What followed was a prolonged attempt by Westcon to convince County employees of its right to further payment. Those employees repeatedly requested documentary proof of Westcon's claim.

It is unclear whether Westcon ever initiated what might be considered a Public Contract Code claim. However, if it did so before final payment by the County, as claimed on appeal, that final payment acted as a rejection of the claim. At that point, any tolling of the one-year period for filing a Government Claims Act claim ended. If, on the other hand, a Public Contract Code claim was submitted after final payment, as asserted by Westcon in the trial court, it was untimely.

Westcon pursued its claim for additional payment by submitting a packet of documentation substantiating its claims. However, Westcon failed to follow up on its submittal and, consequently, failed to learn until more than a year later that the County employees denied having received the packet of documents. The documents were resent, but the County rejected Westcon's claim as untimely.

Westcon did not submit a claim to the County board of supervisors until December 2003. Absent tolling of the claim, this was more than a year after Westcon's Public Contract Code claim, if any, had been resolved.

Westcon contends the Government Claims Act should not be a trap for the unwary. However, those who do business with public entities must know the ground rules and are charged with the knowledge of the provisions of their own contract. Before filing a lawsuit, the contractor must give the public entity notice of the claim and an opportunity to investigate and resolve it short of litigation. For a claim based on breach of contract, such notice must come within a year of accrual of the cause of action. This is a sufficient amount of time for the contractor to put its claim together. The contractor may not sit on its rights until memories become stale or witnesses disappear.

This is not a case of "gotcha," as Westcon characterizes it. In December 2001, the County asked for documentation to support Westcon's claim and then heard nothing for several months. The County proceeded with final payment on the contract. Only later did the County receive anything from Westcon. This was long after the dust had settled on the project. This was simply too late to reopen the matter.

Westcon's December 2003 Government Claims Act claim was untimely, and its June 2003 submittal did not satisfy the Government Claims

Act, because it was not served on the proper entity. The trial court properly granted the County's motion for summary judgment.

## Disposition

The judgment is affirmed.

Morrison, Acting P. J., and Cantil-Sakauye, J., concurred.