Filed 4/15/16  Okiku v. Sacramento Unified School Dist. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| MARIONE OKIKU,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>SACRAMENTO CITY UNIFIED SCHOOL DISTRICT,<br><br>Defendant and Respondent. | C073444<br><br>(Super. Ct. No. 34201000088776CUWTGDS) |

Marione Okiku filed a second amended complaint against the Sacramento City Unified School District (the District) asserting causes of action for tortious discharge in violation of public policy and breach of employment contract or promissory estoppel. The trial court sustained the District's demurrer without leave to amend, ruling that

1

Okiku failed to allege compliance with, or excuse from compliance with, the Government Claims Act, and also failed to show she can cure the pleading deficiency. Okiku subsequently filed a motion for relief based on mistake, relying on Code of Civil Procedure section 473, subdivision (b)[1] and the trial court's inherent equitable authority. The trial court denied the motion.

Okiku now contends (1) the trial court erred in sustaining the demurrer without leave to amend because her second amended complaint pleaded causes of action under the California Fair Employment and Housing Act (FEHA), which are exempt from the claim-presentation requirements of the Government Claims Act; (2) she can amend the challenged pleading to cure any deficiency; and (3) she is entitled to relief because she mistakenly but reasonably believed she presented a government claim to the District in compliance with the Government Claims Act.

Okiku has not demonstrated trial court error. The second amended complaint does not state any FEHA causes of action. Rather, it asserts causes of action for tortious discharge in violation of public policy and breach of employment contract or promissory estoppel, causes of action that require compliance with the Government Claims Act. But the second amended complaint does not plead compliance with, or excuse from compliance with, the Government Claims Act, and Okiku fails to show she can amend to allege the necessary facts. In addition, Okiku fails to show she is entitled to relief under section 473, subdivision (b) or the trial court's equitable authority.

We will affirm the judgment.

BACKGROUND

Representing herself, Okiku filed an original complaint against the District asserting causes of action for violation of FEHA and breach of an implied contract for

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

2

continued employment. The complaint alleged the District terminated Okiku's employment because of her age (over 40) and religion (Sabbatarian), and that the District denied Okiku the opportunity to respond to the allegations against her because of her age, religion, and race (African American). The complaint further alleged there was an implied contract between Okiku and the District providing that the District would not discharge Okiku without good cause, but the District breached that implied contract. The complaint did not allege compliance with the Government Claims Act or excuse from such compliance.

The District demurred to the complaint on various grounds, including that the complaint failed to allege sufficient facts to state a FEHA cause of action for discrimination, and that Okiku cannot state a cause of action for breach of contract because she did not comply with the Government Claims Act. Okiku filed a first amended complaint before the trial court heard the District's demurrer. The trial court deemed the demurrer moot and dropped the matter from its calendar.

The first amended complaint alleged causes of action for breach of implied employment contract, breach of "conciliatory implied agreement and waiver of rights," intentional infliction of emotional distress, and wrongful termination in violation of public policy. The first amended complaint alleged Okiku submitted an "administrative charge of unlawful employment practices and discrimination" against the District on December 11, 2008, but "the administrative body" and the District did not redress the issues raised in the administrative complaint.

The District demurred to the first amended complaint on multiple grounds including failure to allege compliance with the Government Claims Act. The trial court sustained the unopposed demurrer with leave to amend. It ruled, among other things, that Okiku did not allege she filed a government claim in satisfaction of the Government Claims Act.

3

Okiku then filed a second amended complaint. The introductory paragraph of that pleading said Okiku brought suit for breach of FEHA, wrongful termination in violation of public policy, violation of Labor Code section 1102.5, and breach of an employment contract or, in the alternative, promissory estoppel. However, the second amended complaint set forth only two causes of action, a first cause of action for tortious discharge in violation of public policy, and a second cause of action for breach of employment contract or, in the alternative, promissory estoppel. Okiku once again alleged that she brought an "administrative charge" against the District on December 11, 2008, and that the District did not redress the issues she raised.

The District demurred to the second amended complaint on the ground that Okiku failed to allege compliance with the Government Claims Act. The demurrer acknowledged that Okiku had filed an administrative complaint with the Department of Fair Employment and Housing (DFEH) and that FEHA causes of action are exempt from the requirements of the Government Claims Act. The District argued, however, that the second amended complaint did not assert a cause of action under FEHA, and Okiku did not comply with the Government Claims Act.

An attorney substituted in as counsel for Okiku on the same day that Okiku filed an opposition to the demurrer in pro per. The trial court issued a tentative ruling sustaining the District's demurrer without leave to amend; when no oral argument was requested, the trial court affirmed the tentative ruling. According to the trial court, Okiku's allegation that she filed an administrative charge against the District was not sufficient to plead compliance with the Government Claims Act. Because the trial court had previously given Okiku leave to cure that defect and Okiku had not done so, the trial court was not persuaded Okiku could cure the defect. The trial court did not give Okiku another opportunity to amend her pleading.

Okiku's attorney substituted out of the case and Okiku again represented herself, filing a notice of appeal on July 2, 2012. The trial court had not yet signed the order

4

sustaining the District's demurrer, however, and a judgment of dismissal had not yet issued. This Court dismissed the appeal and also denied Okiku's petition for writ of mandamus seeking review of the demurrer order.

Okiku subsequently filed a motion to set aside the demurrer order and dismissal pursuant to section 473, subdivision (b) and the trial court's inherent equitable authority. She said she reasonably believed she had submitted a government claim to the District in compliance with the Government Claims Act and that the District rejected her claim. Okiku said her belief was based on (1) her December 11, 2008 letter to Roy Grimes, Vice President of the Board of Education for the District, informing him that she had been removed from the list of active certified teachers and responding to negative evaluations; (2) her March 23, 2009 letter to Susan Miller, interim superintendent for the District, seeking reinstatement; and (3) her October 13, 2009 DFEH complaint and the DFEH right to sue letter. Okiku said her mistaken belief that she had submitted a claim with the District was an excusable mistake of law. In addition, she argued the second amended complaint could be construed as a complaint asserting a violation of FEHA, which is exempt from the Government Claims Act. Okiku added that her proposed third amended complaint attached to her motion for relief cured the defects.

Okiku's proposed third amended complaint asserted causes of action for discrimination, wrongful termination in violation of public policy, and breach of contract. It alleged the following: between September 2008 and October 23, 2008, senior members of the District's administration discriminated against and harassed Okiku because of her age and race. Okiku received a negative evaluation because she allegedly asked for too much help in controlling a ninth grade class. She received another negative evaluation from James Peterson, who said Okiku raised her voice in class. Peterson's evaluation "made comments regarding [Okiku's] health," which Okiku believed was a reference to her age. Peterson screamed at and berated Okiku in a public hallway, "dragged" her to another class, and criticized her for going to the other class. Okiku

5

complained to District authorities about Peterson's conduct and the negative evaluations. She was discharged on October 23, 2008. Peterson's conduct was because of Okiku's age, and the District terminated her employment because of her age and complaints against Peterson. Okiku wrote to Grimes on December 11, 2008, informing him that she had been removed from the list of active certified substitute teachers and responding to negative evaluations. On March 23, 2009, Okiku wrote a letter to Miller "Re: Substitute Teacher's Wrongful Termination" and sought reinstatement. Okiku believed her letter to Miller was a claim for wrongful termination. On April 1, 2009, Miller responded by directing Carol Mignone Stephen, associate superintendent/chief negotiator, to follow up on the matter. Okiku met with Ms. Stephen, but on July 9, 2009, Okiku was informed that she would remain off the list of active certified substitute teachers for the 2009-2010 school year. Okiku filed a DFEH complaint on October 13, 2009, and received a right to sue letter. Under those circumstances, Okiku reasonably believed she had presented a claim for wrongful termination with the District and that the District had rejected her claim.

The trial court denied Okiku's motion to set aside the demurrer order and dismissal. Regarding Okiku's argument that she was entitled to relief under section 473 because she mistakenly believed she had complied with the Government Claims Act, the trial court ruled ignorance of the law did not afford relief. And regarding Okiku's argument that she was entitled to relief because FEHA claims are exempt from the requirements of the Government Claims Act, the trial court construed the contention as a claim that Okiku either did not realize she could have pleaded a FEHA cause of action or she mistakenly failed to raise the argument in response to the District's demurrer to the second amended complaint. The trial court found no excusable mistake in either case because Okiku alleged she received a right to sue letter from the DFEH in her original complaint and the District had repeatedly acknowledged a FEHA cause of action may be exempt from the Government Claims Act.

6

STANDARD OF REVIEW

A demurrer tests the legal sufficiency of the challenged pleading. (*Milligan v. Golden Gate Bridge Highway & Transportation Dist*. (2004) 120 Cal.App.4th 1, 5.) The standard of review of an order of dismissal following the sustaining of a demurrer is well established. We independently evaluate the challenged pleading, construing it liberally, giving it a reasonable interpretation, reading it as a whole, and viewing its parts in context. (*Id.* at pp. 5-6.) We treat the demurrer as admitting all material facts properly pleaded, but we do not assume the truth of contentions, deductions, or conclusions of law. (*Aubry v. Tri–City Hospital Dist*. (1992) 2 Cal.4th 962, 966-967.) We determine de novo whether the factual allegations of the challenged pleading are adequate to state a cause of action under any legal theory. (*Milligan, supra*, 120 Cal.App.4th at p. 6.) The appellant bears the burden of demonstrating the demurrer was sustained erroneously. (*Friends of Shingle Springs Interchange, Inc. v. County of El Dorado* (2011) 200 Cal.App.4th 1470, 1485.)

We consider whether the challenged pleading might state a cause of action if the appellant were permitted to amend. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) If the complaint could be amended to state a cause of action, the trial court abused its discretion in denying leave to amend and we will reverse; if not, there has been no abuse of discretion and we will affirm. (*Ibid*.) The appellant bears the burden of showing a reasonable possibility that a defect can be cured by amendment. (*Ibid*.)

A motion seeking relief from a judgment or order also lies within the sound discretion of the trial court. (*Zamora v. Clayborn Contracting Group, Inc*. (2002) 28 Cal.4th 249, 257 (*Zamora*); *Ron Burns Construction Co., Inc. v. Moore* (2010) 184 Cal.App.4th 1406, 1413 (*Ron Burns*).) We do not disturb the trial court's exercise of discretion unless the appellant clearly demonstrates an abuse of discretion. (*Zamora, supra,* 28 Cal.4th at pp. 257-258; *State Farm Fire & Casualty Co. v. Pietak* (2001) 90 Cal.App.4th 600, 610 (*Pietak*).) We scrutinize a trial court order denying relief more

7

carefully than an order permitting trial on the merits. (*Ron Burns, supra,* 184 Cal.App.4th at p. 1413.)

DISCUSSION

I

Okiku contends the trial court erred in sustaining the demurrer without leave to amend because her second amended complaint pleaded FEHA causes of action which are exempt from the claim-presentation requirements of the Government Claims Act.

It is true that Okiku's original complaint contained a cause of action denominated "violation of Fair Employment and Housing Act." But Okiku twice amended her original complaint. An amended complaint supersedes all prior complaints (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 884; *Lee v. Bank of America* (1994) 27 Cal.App.4th 197, 215), and once amended, a prior complaint ceases to perform any function as a pleading. (*Ibid.*; *Anmaco, Inc. v. Bohlken* (1993) 13 Cal.App.4th 891, 901.) Although there are exceptions, a reviewing court will generally consider only the most recent amended pleading. (*Foreman & Clark, supra,* 3 Cal.3d at p. 884; *Lee, supra,* 27 Cal.App.4th at p. 215; *Amid v. Hawthorne Community Medical Group, Inc.* (1989) 212 Cal.App.3d 1383, 1390.) Thus, we examine the second amended complaint to determine whether, as Okiku asserts, it pleaded FEHA causes of action.

FEHA provides that, with certain exceptions, it is an unlawful employment practice for an employer to discharge a person from employment or to discriminate against a person in compensation or in terms, conditions, or privileges of employment because of the person's race, religious creed or age. (Gov. Code, § 12940, subd. (a).) To state a discrimination claim under FEHA, a plaintiff must show (1) she was a member of a protected class; (2) she suffered an adverse employment action; (3) she was satisfactorily performing her job when the adverse action was taken against her; and (4) there were circumstances suggesting that the employer acted with a prohibited discriminatory motive. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 355;

8

*Rope v. Auto-Chlor System of Washington, Inc*. (2013) 220 Cal.App.4th 635, 656; *Caldwell v. Paramount Unified School Dist*. (1995) 41 Cal.App.4th 189, 202, fn. 7 [the plaintiff must plead a prima facie case in order to survive a demurrer].) A plaintiff must plead the essential facts of her case " ' "with particularity sufficient to acquaint a defendant with the nature, source and extent of [her FEHA] cause of action." ' " (*Alch v. Superior Court* (2004) 122 Cal.App.4th 339, 382.)

The second amended complaint alleges the following: Okiku is "of African American Origin." Defendant employed her as a substitute teacher and she performed her duties "fully well." Okiku "started feeling a pattern of discrimination and harassment by senior members of the administration." She was "harassed, shouted upon and felt degraded and humiliated by unwarranted behavior of the Management Staff and as the agents and representatives of the defendant." She was "removed from the list [of active certified substitute teachers] and terminated from [her] job," and she "suffered intimidation, harassment and indignation at the hands of defendants." Okiku was fired for making complaints against the defendants and their agents pursuant to Labor Code 6310 and "illegal harassment, discrimination and abusive behaviors."

Although the second amended complaint said Okiku was bringing suit for breach of FEHA, the pleading did not identify a cause of action or count labeled violation of FEHA. (Cal. Rules of Court, rule 2.112 [requiring each cause of action or count to be separately stated by number (e.g., "first cause of action") and its nature (e.g., "for fraud")].) Contrary to Okiku's assertion, the District did not concede in the trial court that the second amended complaint included a FEHA cause of action. The District argued the opposite.

More importantly, the second amended complaint did not plead the essential elements of a FEHA cause of action. Okiku did not state a FEHA discrimination cause of action because the second amended complaint did not allege that the District treated Okiku differently because of her age, race, religious creed, or other protected

9

classification.  (*Janken v. GM Hughes Electronics* (1996) 46 Cal.App.4th 55, 79 [personnel management actions are discriminatory under FEHA only if motivated by prohibited discriminatory considerations]; *Mayes v. Kaiser Foundation Hospitals* (E.D.Cal. 2013) 917 F.Supp.2d 1074, 1079 [complaint that does not allege termination was because of the plaintiff's race or sex does not state a FEHA cause of action].)  In addition, Okiku did not state a FEHA harassment cause of action because the second amended complaint did not allege harassment based on her age or religion that was sufficiently severe or pervasive so as to alter the conditions of Okiku's employment and create an abusive working environment.  (*Thompson v. City of Monrovia* (2010) 186 Cal.App.4th 860, 876; *Fisher v. San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590, 608, 612-614.)

The second amended complaint did not state a cause of action for violation of FEHA even when we construe it liberally.  Thus, the cases holding that FEHA causes of action are excused from the government claim-filing requirement -- *Garcia v. Los Angeles Unified School Dist.* (1985) 173 Cal.App.3d 701, 711, and *Murray v. Oceanside Unified School Dist.* (2000) 79 Cal.App.4th 1338, 1360-1361 -- do not help Okiku.

Okiku nevertheless argues that her first cause of action in the second amended complaint for tortious discharge in violation of public policy sufficiently asserted a FEHA violation.  But a cause of action for employment discrimination or harassment under FEHA is distinct from the tort of wrongful discharge in violation of public policy.  The two causes of action have different elements.  (Compare, e.g., *Guz v. Bechtel National, Inc.*, *supra*, 24 Cal.4th at p. 355 [elements of a FEHA discrimination claim] with *Rope v. Auto-Chlor System of Washington, Inc.*, *supra*, 220 Cal.App.4th at p. 660 [elements of a claim for wrongful discharge in violation of public policy].)  A plaintiff asserting a FEHA claim must exhaust the administrative remedies under that statute before seeking judicial relief.  (*Rojo v. Kliger* (1990) 52 Cal.3d 65, 88.)  As we explain

10

in part II, different exhaustion requirements apply to the causes of action actually asserted by Okiku in her second amended complaint.

II

Okiku contends she can amend the challenged pleading to cure any deficiency. It is, of course, an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility a defect can be cured by amendment. (*Blank v. Kirwan, supra,* 39 Cal.3d at p. 318.)  And a plaintiff can demonstrate, for the first time on appeal, the manner in which the complaint can be amended to cure a defect. (*Ross v. Creel Printing & Publishing Co., Inc.* (2002) 100 Cal.App.4th 736, 748; *Dudley v. Department of Transportation.* (2001) 90 Cal.App.4th 255, 260; *Roman v. County of Los Angeles* (2000) 85 Cal.App.4th 316, 322.)

As we have explained, the second amended complaint asserted causes of action for tortious discharge in violation of public policy and breach of employment contract or promissory estoppel.  The claim-presentation requirements of the Government Claims Act apply to tort claims and claims for breach of contract.  (*Loehr v. Ventura County Community College Dist.* (1983) 147 Cal.App.3d 1071, 1079 (*Loehr*).)  Thus, before filing suit, Okiku had to present a written claim to the District and the District had to act upon the claim or be deemed to have rejected it.  (Gov. Code, §§ 900.2, 905, 940.2, 945.4.)  The timely presentation of a pre-lawsuit claim is an element of Okiku's causes of action (*Shirk v. Vista Unified School Dist.* (2007) 42 Cal.4th 201, 209) and failure to timely present such a claim would be fatal to her lawsuit.  (*DiCampli-Mintz v. County of Santa Clara* (2012) 55 Cal.4th 983, 990.)  Failure to allege facts demonstrating or excusing compliance with the Government Claims Act subjects her causes of action to demurrer.  (*State of California v. Superior Court* (*Bodde*) (2004) 32 Cal.4th 1234, 1239.)

To analyze whether the second amended complaint adequately pleaded compliance with, or excuse from compliance with, the Government Claims Act, we must first explain the requirements of the Government Claims Act.  A "claim" within the

11

meaning of the Government Claims Act is a notice that complies with Government Code section 910. (*Phillips v. Desert Hospital Dist*. (1989) 49 Cal.3d 699, 707 (*Phillips*).) Government Code section 910 requires a claim to set forth all of the following: (1) the name and post office address of the claimant; (2) the post office address to which the person presenting the claim desires notices to be sent; (3) the date, place and other circumstances of the occurrence or transaction which gives rise to the claim asserted; (4) a general description of the indebtedness, obligation, injury, damage or loss incurred so far as it may be known at the time of presentation of the claim; (5) the name or names of the public employee or employees causing the injury, damage, or loss, if known; and (6) the amount claimed if it totals less than $10,000 as of the date of presentation of the claim, including the estimated amount of any prospective injury, damage, or loss, insofar as it may be known at the time of the presentation of the claim, together with the basis of computation of the amount claimed. (Gov. Code, § 910.) If the amount claimed exceeds $10,000, no dollar amount shall be included in the claim. (*Ibid*.) However, the claimant must indicate whether the claim would be a limited civil case. (*Ibid*.)

"Where a claimant has attempted to comply with the claim requirements but the claim is deficient in some way, the doctrine of substantial compliance may validate the claim 'if it substantially complies with all of the statutory requirements . . . even though it is technically deficient in one or more particulars.' " (*Connelly v. County of Fresno* (2006) 146 Cal.App.4th 29, 38.) Substantial compliance is at least some compliance with each of the statutory requirements. (*Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 769.) A writing which does not indicate the plaintiff is asserting a monetary claim does not substantially comply with the Government Claims Act. (*Phillips, supra,* 49 Cal.3d at p. 708, fn. 7; *Del Real v. City of Riverside, supra,* 95 Cal.App.4th at p. 769; *Wood v. Riverside General Hospital* (1994) 25 Cal.App.4th 1113, 1118; *Loehr, supra,* 147 Cal.App.3d at p. 1083; *Tyus v. City of Los Angeles* (1977) 74 Cal.App.3d 667, 671-672 (*Tyus*).)

12

If a "claim as presented" does not substantially comply with the requirements of Government Code section 910, the public entity must advise the claimant of the deficiencies or lose the right to assert a defense as to the sufficiency of the claim. (Gov. Code, §§ 910.8, 911.) "[A] document constitutes a 'claim as presented' triggering [Government Code] sections 910.8, [and] 911 . . . if it discloses the existence of a 'claim' which, if not satisfactorily resolved, will result in a lawsuit against the entity. [Citation.] A public entity's receipt of written notice that a claim for monetary damages exists and that litigation may ensue places upon the public entity the responsibility, and gives it the opportunity, to notify the potential plaintiff pursuant to [Government Code] sections 910.8 and 911 of the defects that render the document insufficient under [Government Code] sections 910 and 910.2 and thus might hamper investigation and possible settlement of the claim. Such a written notice claiming monetary damages thereby satisfies the purposes of the claims act - to facilitate investigation of disputes and their settlement without trial if appropriate [citation]." (*Phillips, supra*, 49 Cal.3d at p. 709; see *Westcon Construction Corp. v. County of Sacramento* (2007) 152 Cal.App.4th 183, 202.)

A personal injury claim must be presented not later than six months after the accrual of the cause of action. (Gov. Code, § 911.2, subd. (a).) The date of the accrual of a cause of action to which a claim relates is the date upon which the cause of action would be deemed to have accrued within the meaning of the statute of limitations which would be applicable if there were no claim-presentation requirement. (Gov. Code, § 901.) A cause of action ordinarily accrues upon the occurrence of the last element essential to the cause of action. (*Ovando v. County of Los Angeles* (2008) 159 Cal.App.4th 42, 66.)

The California Supreme Court has not addressed the specificity with which a plaintiff must allege compliance with the Government Claims Act. But one appellate court held that a plaintiff may allege compliance with the claims requirements by

generally alleging she timely complied with the claims statute. (*Perez v. Golden Empire Transit Dist.* (2012) 209 Cal.App.4th 1228, 1236-1237 (*Perez*); see *Gong v. City of Rosemead* (2014) 226 Cal.App.4th 363, 374.) In *Perez*, the complaint alleged the plaintiff "filed a timely claim complying with the required claims statute" and complied "with the requirements of the government tort claim statute." (*Perez, supra*, 209 Cal.App.4th at p. 1232.) The Fifth District Court of Appeal held that the general allegations regarding compliance with the Government Claims Act were sufficient to withstand demurrer. (*Id.* at pp. 1237-1239.)

Here, the second amended complaint did not plead any facts demonstrating or excusing compliance with the Government Claims Act. It merely alleged Okiku submitted an "administrative charge" against the District. It did not mention a claim or demand for money and it did not reference the Government Claims Act. (*Sanchez v. City of Fresno* (E.D.Cal. 2012) 914 F.Supp.2d 1079, 1119 [granting motion to dismiss where the complaint did not reference the Government Claims Act and did not allege compliance with the statute]; *Robinson v. Alameda County* (N.D.Cal. 2012) 875 F.Supp.2d 1029, 1044 [granting motion to dismiss where the complaint did not allege compliance with the Government Claims Act or an excuse for noncompliance and made no mention of the Government Claims Act].) There was no allegation that within six months from Okiku's discharge (i.e., April 23, 2009) she informed the District that she had a claim for monetary damages against it such as to give the District an opportunity to investigate the facts, determine whether to settle the claim before suit is brought, and make any necessary fiscal plans.[2] Okiku's opposition to the District's demurrer to the

---

[2] The first cause of action of the second amended complaint (tortious discharge in violation of public policy) is based on plaintiff's dismissal on October 23, 2008. That cause of action accrued when Okiku's employment was terminated. (*Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 503.) The second cause of action for breach of contract is based on harassment, mistreatment, and discharge. Based on the

14

second amended complaint did not demonstrate how Okiku could amend the second amended complaint to state that she had filed a claim for damages with the District as required under the Government Claims Act. The trial court properly sustained the District's demurrer.

Okiku nevertheless contends her proposed third amended complaint shows she can allege compliance with, or excuse from compliance with, the Government Claims Act. We disagree.

Nowhere in the proposed third amended complaint, Okiku's declaration in support of her motion to set aside, or on appeal does Okiku allege she timely notified the District that she was making a claim for monetary damages against it. Okiku has twice amended her complaint and presented the trial court with a proposed third amended complaint, but she still fails to show that she can amend her pleading to allege the necessary facts. Okiku's argument -- that she presented a claim to the District in compliance with the Government Claims Act -- is incorrect. Under the circumstances, the trial court did not err in sustaining the District's demurrer without leave to amend.

III

Okiku further argues she is entitled to relief, either pursuant to section 473 or the trial court's equitable authority, because she mistakenly but reasonably believed she presented a claim to the District in compliance with the Government Claims Act.

A

We begin with Okiku's request for relief pursuant to section 473. A court may, upon any terms as may be just, relieve a party from a judgment, dismissal, order, or other proceeding taken against her through her mistake, inadvertence, surprise, or excusable neglect. (§ 473, subd. (b).) Application for relief under section 473 must be made within

---

allegations of the second amended complaint, the last date when the second cause of action accrued is also October 23, 2008.

15

a reasonable time, in no case exceeding six months, after the judgment, dismissal, order, or proceeding was taken.  (§ 473, subd. (b).)  We liberally construe the provisions of section 473 to carry out the policy of permitting trial on the merits whenever possible.  (*Maynard v. Brandon* (2005) 36 Cal.4th 364, 371-372; *Hopkins & Carley v. Gens* (2011) 200 Cal.App.4th 1401, 1410 (*Hopkins & Carley*).)  Any doubts in applying section 473 must be resolved in favor of the party seeking relief.  (*Maynard, supra*, 36 Cal.4th at p. 372.)  That party bears a double burden in establishing a right to relief.  (*Hopkins & Carley, supra,* 200 Cal.App.4th at p. 1410.)  She must show a satisfactory excuse for her act or omission and diligence in making the motion for relief after discovery of the error.  (*Ibid.*)  If the mistake is excusable and the party seeking relief has been diligent, courts have often granted relief under section 473, subdivision (b) if no prejudice to the opposing party will ensue.  (*Zamora, supra*, 28 Cal.4th at p. 258.)

Okiku says that prior to filing the original complaint, she sent District representatives two letters (both of which were sent within six months of her discharge), and then prior to the expiration of one year following her discharge, she filed an administrative complaint with the DFEH against the District, alleging employment discrimination based on her race, age, and religion.  Okiku says she believed, by virtue of her letters and DFEH complaint, that she had presented a claim to the District.

A mistake of law occurs " ' "when a person knows the facts as they really are but has a mistaken belief as to the legal consequence of those facts." ' "  (*Powell v. City of Long Beach* (1985) 172 Cal.App.3d 105, 109.)  An honest mistake of law can provide relief under section 473.  (*Hopkins & Carley, supra*, 200 Cal.App.4th at p. 1412; *Pietak, supra,* 90 Cal.App.4th at p. 611.)  Whether a mistake of law furnishes grounds for relief depends on the reasonableness of the misconception and the justifiability of the failure to determine the correct law.  (*Hopkins & Carley, supra*, 200 Cal.App.4th at p. 1413; *Ron Burns, supra*, 184 Cal.App.4th at p. 1414 [the issue of whether a mistake of law constitutes excusable neglect presents a question of fact].)  Relief is properly denied

16

where the record shows " 'ignorance of the law coupled with negligence in ascertaining it.' " (*Hopkins & Carley, supra*, 200 Cal.App.4th at pp. 1412-1413; *Ron Burns, supra*, 184 Cal.App.4th at p. 1414; *Robbins v. Los Angeles Unified School Dist.* (1992) 3 Cal.App.4th 313, 319.)[3]

Okiku's alleged mistaken belief was not a reasonable one. The requirements for presenting a claim to a public entity are well-settled. (*Phillips, supra,* 49 Cal.3d at p. 708, fn. 7; *City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 454; *Loehr, supra,* 147 Cal.App.3d at p. 1082-1083; *Tyus, supra,* 74 Cal.App.3d at pp. 671-672.) There is no excusable mistake of law where the plaintiff's mistaken belief has no basis in law. (*Hanooka v. Pivko* (1994) 22 Cal.App.4th 1553, 1565.) Although Okiku was not represented by counsel, she is entitled to the same, but no greater, consideration than other litigants and attorneys. (*Burnete v. La Casa Dana Apartments* (2007) 148 Cal.App.4th 1262, 1267.)

Even if Okiku's mistake had been a reasonable one, nothing in the record shows she had sufficient justification for her failure to determine the correct law. Nothing in the record or the appellate briefs explains what efforts Okiku made to seek legal counsel or to

---

[3] When a claimant fails to file a claim for damages with the public entity within six months after the accrual of her cause of action, she may make a written application to the public entity for leave to present a late claim. (Gov. Code, §§ 911.2, subd. (a), 911.4, subd. (a).) If the public entity denies the application or the application is deemed denied, the claimant may petition the court for relief from the claim-presentation requirements. (Gov. Code, §946.6, subd. (a).) The petition for relief must be filed within six months after the application to the public entity is denied or deemed to be denied. (Gov. Code, § 946.6, subd. (b).) The trial court cannot grant relief under Government Code section 946.6 when an application to file a late claim is filed more than one year after the accrual of the cause of action. (*J.J. v. County of San Diego* (2014) 223 Cal.App.4th 1214, 1221.) Here, the record does not show that plaintiff attempted to file an application for leave to present a late claim with the school district or a petition for relief under Government Code section 946.6 in the trial court.

determine the validity of her belief that she had presented a claim for damages to the District.  (*Robbins v. Los Angeles Unified School Dist., supra*, 3 Cal.App.4th at p. 319.)

To secure relief under section 473, subdivision (b) based on a failure to adequately represent herself, the party seeking relief must show she exercised such reasonable diligence as a person of ordinary prudence usually bestows upon important business.  (*Hopkins & Carley, supra*, 200 Cal.App.4th at p. 1413.)  "The law does not entitle a party to proceed experimentally without counsel and then turn back the clock if the experiment yields an adverse result.  One who voluntarily represents himself 'is not, for that reason, entitled to any more (or less) consideration than a lawyer.  Thus, any alleged ignorance of legal matters or failure to properly represent himself can hardly constitute "mistake, inadvertence, surprise or excusable neglect" as those terms are used in section 473.' [Citation.]  Rather, 'when a litigant accepts the risks of proceeding without counsel, he or she is stuck with the outcome, and has no greater opportunity to cast off an unfavorable judgment than he or she would if represented by counsel.' " (*Ibid*.)  A party's mistake in representing herself does not afford a ground for relief from adverse results.  (*Id.* at p. 1414.)

*Schoenfeld v. Gerson* (1941) 48 Cal.App.2d 739, a case upon which Okiku relies, is distinguishable because the record in that case showed counsel for both sides misunderstood the nature and effect of the prior proceedings, and the uncontroverted affidavit of the defendant's counsel supported the trial court's finding of mistake.  (*Id.* at pp. 743-744.)  The record here does not support a conclusion that Okiku made a reasonable mistake and acted in a prudent manner in ascertaining the validity of her alleged mistaken belief.

As to whether Okiku was diligent in seeking relief for her alleged mistake, Okiku claims she "has been diligent in pursuing her action throughout all proceedings." But the trial court sustained the District's demurrer to the first amended complaint on November 8, 2011, ruling that Okiku's allegation of an "administrative charge" was

insufficient to allege compliance with the Government Claims Act. Nothing in the record shows that Okiku undertook to understand and remedy the deficiency. Instead, she simply filed a second amended complaint, essentially repeating the allegation the trial court had already determined was insufficient. Okiku did not file a motion for relief based on mistake until a year after the trial court's ruling on the first amended complaint. She has not shown reasonable diligence in seeking relief for her alleged mistake.

We have already concluded that Okiku's additional arguments lack merit. The second amended complaint did not plead FEHA causes of action and Okiku has not demonstrated that she can cure the pleading deficiencies.

Okiku fails to show she is entitled to relief under section 473, subdivision (b).

B

Okiku also points out that a court has inherent equitable power to set aside a judgment on the ground of extrinsic fraud or mistake. We agree that such authority exists. (*Zamora, supra*, 28 Cal.4th at p. 260; *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 981; *Moghaddam v. Bone* (2006) 142 Cal.App.4th 283, 290 (*Moghaddam*).) When relief under section 473 is not available, however, there is a strong public policy in favor of the finality of judgments and relief from a judgment should be granted only in exceptional circumstances. (*Rappleyea v. Campbell, supra*, 8 Cal.4th at pp. 981-982.)

In any event, Okiku forfeited this appellate contention by failing to explain the extrinsic fraud or mistake in this case. We are not required to examine Okiku's undeveloped claim. (*Maral v. City of Live Oak* (2013) 221 Cal.App.4th 975, 984-985; *Tilbury Constructors, Inc. v. State Comp. Ins. Fund* (2006) 137 Cal.App.4th 466, 482-483; *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785.) As far as we can tell, the record does not contain evidence of extrinsic fraud or mistake. " ' "Extrinsic fraud occurs when a party is deprived of the opportunity to present his claim or defense to the court; where he was kept ignorant or, other than from his own negligence, fraudulently prevented from fully participating in the proceeding. [Citation.] Examples

19

of extrinsic fraud are: . . . failure to give notice of the action to the other party, and convincing the other party not to obtain counsel because the matter will not proceed (and then it does proceed). [Citation.] The essence of extrinsic fraud is one party's preventing the other from having his day in court." ' " (*Moghaddam, supra,* 142 Cal.App.4th at p. 290.) No such circumstances are asserted or identified in this case.

Extrinsic mistake involves the excusable neglect of a party. (*Moghaddam, supra,* 142 Cal.App.4th at p. 290.) Ignorance of the law is not extrinsic mistake which would entitle a litigant to relief under the court's equity jurisdiction. (*Stiles v. Wallis* (1983) 147 Cal.App.3d 1143, 1147.) And as we have explained, Okiku has not shown her mistake was reasonable or excusable. (*Id.* at pp. 1147-1148 [party seeking relief based on extrinsic mistake must show, among other things, a satisfactory excuse for her inaction].)

Okiku adds that under the "Kaldor-Hicks test of efficiency," the balance of gains and harms weighs in her favor. She cites a law review article published in 1980 in support of her argument, but we have found no California case adopting the Kaldor Hicks test of efficiency. Nevertheless, Okiku argues a reversal of the judgment would protect her substantive due process rights and allow a trier of fact to decide the substantive merits of her complaint. She adds that the proposed third amended complaint cured the defects of the second amended complaint by properly pleading a FEHA cause of action. She claims the District would not be prejudiced by a reversal because after discovery the District may move for summary judgment on the merits of the complaint. And according to Okiku, if reversal is not granted the District's "reprehensible and outrageous discriminatory actions would go unanswered" and Okiku's "fifteen years as a substitute teacher would be for naught."

While courts favor trial on the merits, that policy "cannot invariably prevail over competing policies, including those that 'favor getting cases to trial on time, avoiding unnecessary and prejudicial delay, and preventing litigants from playing fast and loose

with the pertinent legal rules and procedures.' " (*Hopkins & Carley, supra*, 200 Cal.App.4th at p. 1415.) "This is a rule of necessity, for ' "[w]hen inexcusable neglect is condoned even tacitly by the courts, they themselves unwittingly become instruments undermining the orderly process of the law." ' [Citations.] And ' "[a] doctrine generally requiring or permitting exceptional treatment of parties who represent themselves would lead to a quagmire in the trial courts, and would be unfair to the other parties to litigation." ' " (*Ibid.*)

Okiku has not demonstrated that she is entitled to relief based on her alleged mistake or that she acted with reasonable diligence in seeking relief after discovering her mistake. The trial court did not abuse its discretion in denying Okiku's motion for relief under the present circumstances.

DISPOSITION

The judgment is affirmed.


_____/S/_____

Mauro, J.

We concur:


_____/S/_____
Butz, Acting P. J.


_____/S/_____
Hoch, J.

21